# BOARD OF ZONING APPEALS OF JAMES CITY COUNTY

v.

# UNIVERSITY SQUARE ASSOCIATES

Record No. 921599

September 17, 1993

Present: All the Justices

*Leo P. Rogers, Assistant County Attorney (Frank M. Morton, III, County Attorney,* on briefs), for appellant.

*John R. Walk (Ian J. Wilson; Alvin P. Anderson; Hirschler, Fleischer, Weinberg, Cox & Allen; Anderson, Franck & Davis,* on brief), for appellee.

JUSTICE KEENAN delivered the opinion of the Court.

This appeal of the trial court's review of a decision by the Board of Zoning Appeals of James City County (the BZA) presents two distinct issues: (1) whether the trial court had jurisdiction to rule on the constitutionality of underlying zoning legislation in its review of the BZA's decision to uphold the rejection of a proposed site plan; and (2) whether the decision of the BZA is plainly wrong or based on erroneous principles of law.

In October 1990, University Square Associates (University Square) sought legislation granting a special use permit (SUP), pursuant to James City County Code § 20-104, to expand a shopping plaza located at the intersection of State Routes 5 and 199 in James City County (the County). In April 1991, the James City County Planning Commission recommended passage of University Square's request for a SUP, after amending condition #3 to include language requiring a 50-foot set-back along the future right-of-way of Route 199.

In September 1989, the James City County Board of Supervisors (Board of Supervisors) had passed a resolution endorsing the use of Virginia Department of Transportation (VDOT) plan ''Alternate 1A'' for the future Route 199 corridor. Also, in February 1990, the Commonwealth Transportation Board had selected Alternate 1A as the design for future Route 199.[1]

On June 17, 1991, the Board of Supervisors enacted legislation granting the SUP, including condition #3, which stated that ''[a] minimum 50-foot greenbelt, free of structures and paving shall be provided along the future right-of-way [of] Route 199 and shall contain enhanced landscaping as approved by the Development Review Committee, with the minimum landscaping in accordance with the standards contained in the Zoning Ordinance.'' On the same day, the Board of Supervisors approved University Square's Binding Master Plan (master plan) that was submitted pursuant to County Code § 20-104(c)(1). The master plan, which depicts the overall design of the shopping plaza, includes a 20,000 square-foot building near existing Route 199; however, the master plan does not show a set-back from existing Route 199.

---

[1] Pursuant to Code § 33.1-12, the Commonwealth Transportation Board is authorized, among other things, ''[t]o locate and establish the routes to be followed by the roads comprising systems of state highways between the points designated in the establishment of such systems.''

On June 24, 1991, University Square submitted its proposed site plan for approval to the County's Zoning Administrator. The proposed site plan included the 20,000 square-foot building shown on the master plan and a 50-foot set-back from the existing right-of-way of Route 199. On August 15, 1991, the Zoning Administrator rejected the proposed site plan, ruling that it failed to comply with the requirement of condition #3 of the SUP that the set-back be measured from the future right-of-way of Route 199, which he interpreted to be Alternate 1A. University Square appealed the Zoning Administrator's decision to the BZA. On October 24, 1991, the BZA unanimously sustained the Zoning Administrator's rejection of the proposed site plan.

University Square appealed the BZA's decision to the trial court. It filed a petition for a writ of certiorari and a bill of complaint against the BZA, the Zoning Administrator, and the County, seeking to reverse the BZA's decision and to obtain a declaratory judgment and injunctive relief. Upon the demurrer of the Zoning Administrator and the County, the trial court dismissed Counts II, III, and IV of the petition. The petition proceeded solely against the BZA on Count I and asked the trial court, among other things, for a writ of certiorari to review the decision of the BZA and for a declaratory judgment that "the decision of the BZA violates the County Code, common law, state law, applicable case law and the Constitution of the Commonwealth of Virginia."

In a final order stating that the matter had come before the court on a writ of certiorari to review the decision of the BZA, the trial court reversed the BZA's decision on the ground that condition #3 of the SUP was so vague and uncertain that it was totally unenforceable. The BZA appealed this decision.

The BZA argues that the trial court did not have jurisdiction to rule on the validity of the SUP in reviewing the BZA's decision on a writ of certiorari. In response, University Square contends that, based on its request for a declaratory judgment and injunctive relief in Count I, the trial court had jurisdiction to consider the constitutionality of the SUP. University Square further contends that, even if its request for a declaratory judgment and injunctive relief was improper, nevertheless, the trial court had jurisdiction to address the validity of the zoning legislation in the certiorari proceeding. We disagree with University Square.

■ In *Scottsdale Insurance Co. v. Glick*, 240 Va. 283, 289, 397 S.E.2d 105, 108 (1990), this Court held that, in a declaratory judgment action, the trial court may resolve only issues that have been pleaded specifically in the petition for declaratory judgment. Here, in Count I, University Square did not request that the trial court declare condition #3 unconstitutional. Rather, it sought a declaratory judgment that the BZA's interpretation of condition #3 is unconstitutional, as well as an injunction prohibiting the BZA from enforcing its decision. Thus, this request for a declaratory judgment and injunctive relief was simply another method of asking the trial court to reverse the BZA's decision.

Furthermore, the BZA's decision did not address the validity or constitutionality of any part of the SUP. Instead, the BZA upheld the Zoning Administrator's ruling that University Square's proposed site plan did not meet the requirements of condition #3.

■ The trial court held that the language of condition #3 is "so vague and uncertain that it is totally unenforceable; and that the attempted enforcement of said condition is contrary to law." Therefore, in invalidating a portion of the SUP itself, rather than the BZA's interpretation of that legislation as requested by University Square, the trial court erroneously ruled on an issue that was not pleaded specifically in the request for declaratory judgment. *Id.*

We next consider whether the trial court had jurisdiction to invalidate a portion of the SUP in its review of the BZA's decision pursuant to the writ of certiorari. This is an issue of first impression in Virginia.

■ This Court has held that a board of zoning appeals "is a creature of statute possessing only those powers expressly conferred upon it." *Lake George Corp. v. Standing*, 211 Va. 733, 735, 180 S.E.2d 522, 523 (1971). Code § 15.1-497 provides that "[u]pon the presentation of [a] petition, the court shall allow a writ of certiorari to review the decision of the board of zoning appeals." Applying this expressly limited standard of review, we hold that the certiorari process does not authorize a trial court to rule on the validity or constitutionality of legislation underlying a board of zoning appeals decision.

■ Our conclusion is supported by the fact that the proceeding on a writ of certiorari is not a trial *de novo*. *Town of Ashland v. Ashland Inv. Co.*, 235 Va. 150, 155, 366 S.E.2d 100, 103 (1988). Rather, the trial court's review is limited to determining whether the decision of the board of zoning appeals is plainly wrong or is based

on erroneous principles of law. *Masterson v. Board of Zoning Appeals*, 233 Va. 37, 44, 353 S.E.2d 727, 732-33 (1987). Therefore, since the BZA's decision was limited to the issue whether the Zoning Administrator's ruling was correct, the constitutionality of the underlying legislation was not a proper subject for the trial court's review on a writ of certiorari.[2]

Our ruling here is consistent with the decisions of courts in several other states that have addressed this issue and have held that a party seeking judicial review of a board of zoning appeals decision may not challenge the validity of underlying zoning legislation. *Rubin v. Board of Directors*, 104 P.2d 1041, 1043-44 (Cal. 1940); *National Transp. Co. v. Toquet*, 196 A. 344, 348 (Conn. 1937); *River Forest State Bank & Trust Co. v. Board of Zoning Appeals*, 181 N.E.2d 1, 3 (Ill. App. Ct. 1961); *Board of Zoning Appeals v. Waintrup*, 193 N.E. 701, 704 (Ind. 1935); *Gamache v. Town of Acushnet*, 438 N.E.2d 82, 88 (Mass. App. Ct. 1982); *Austin v. Older*, 270 N.W. 771, 772 (Mich. 1936); *Sherrill v. Town of Wrightsville Beach*, 334 S.E.2d 103, 105 (N.C. 1985); *Drabble v. Zoning Bd. of Review*, 159 A. 828, 829 (R.I. 1932); *Carter v. City of Bluefield*, 54 S.E.2d 747, 757-58 (W. Va. 1949).

■ Thus, the only issue properly before the trial court was whether the BZA's decision was plainly wrong or applied erroneous principles of law. The BZA argues that the trial court erred in failing to uphold the decision in accordance with this standard of review. We agree.

■ In *Masterson*, 233 Va. at 44, 353 S.E.2d at 732-33, this Court held that

> [t]he decision of the board of zoning appeals is presumed to be correct on appeal to a circuit court; the appealing party bears the burden of showing that the board applied erroneous principles of law or that its decision was plainly wrong and in violation of the purpose and intent of the zoning ordinance.

In the present case, we hold that University Square failed to meet this burden of proof.

[2] University Square had other means by which it could have challenged condition #3 of the SUP. As noted by the BZA, University Square could have applied to the Board of Supervisors for an amendment to the SUP, or it could have challenged directly the validity of the SUP in an action against the County.

The BZA's decision is supported by substantial evidence showing that Alternate 1A was the ''future right-of-way'' referred to in condition #3 of the SUP. The evidence before the BZA included the staff memoranda relied on by the Board of Supervisors, which showed that Alternate 1A had been adopted as the corridor for future Route 199. The evidence also showed that, during the SUP approval process, VDOT and a private engineering firm each submitted a separate traffic analysis, based on Alternate 1A, for the Board's consideration.

■ John T. P. Horne, the County Development Manager, testified before the BZA that this location of the future right-of-way was staked out on the property. In addition, the Zoning Administrator, Bernard M. Farmer, Jr., testified before the BZA, without objection, that he reviewed the documents presented to the Planning Commission and the Board of Supervisors, that he felt ''absolutely certain that [the Board of Supervisors] understood the implications of saying future right-of-way,'' and that the Board intended the term to apply to Alternate 1A. Farmer also testified that the corridor for future Route 199 could change[3]. However, at the time the SUP was approved, Alternate 1A had been selected as the future location of Route 199, and the BZA heard no evidence indicating that the Commonwealth Transportation Board intended to reconsider its selection. Therefore, we hold that the evidence, considered as a whole, supports the BZA's decision.

University Square also argues that the BZA's interpretation of condition #3 was erroneous because such interpretation would render the site plan inconsistent with the master plan. In response, the BZA asserts that there is no inconsistency because the master plan is only a general representation of the improvements allowed under the special use permit and does not address set-back requirements. We agree with the BZA.

James City County Code § 20-104(c)(1) requires the submission of a master plan for any use that will require a SUP. That section states that the plan ''shall depict and bind the approximate boundaries and general location of all principal land uses.'' This requirement is applicable to ''features to be located on the site for which approval is sought.'' *Id.* In addition, County Code § 20-468(b)

---

[3] Farmer testified that, without renewing the public hearing process, the Commonwealth Transportation Board could vary the location of the adopted corridor by only one or two feet.

describes the required content of a master plan. That section mandates only that the master plan show the approximate locations of roads and buildings; it does not require any depiction of set-back areas. Finally, we note that, in accordance with these provisions, the master plan submitted by University Square shows no set-back from existing Route 199.

■ Based on the above provisions, we conclude that the master plan does not bind the County in determining a set-back requirement. Moreover, we note that University Square implicitly concedes this point in arguing that, under its interpretation of the SUP, the set-back requirement could be altered in the future.

■ For these reasons, we hold that the BZA's decision was not plainly wrong and in violation of the purpose of the zoning ordinance; nor was the decision based on erroneous principles of law. Therefore, we will reverse the judgment of the trial court and enter final judgment here reinstating the decision of the BZA.

*Reversed and final judgment.*