PRESENT: All the Justices

CARL T. NORTON

OPINION BY
v.  Record No. 032805        JUSTICE G. STEVEN AGEE
September 17, 2004

CITY OF DANVILLE, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
Joseph W. Milam, Jr., Judge


In this appeal, we consider whether the Danville City
Council (the "city council") acted contrary to law or so
arbitrarily as to constitute an abuse of discretion when it
affirmed the decision of the Danville Commission of
Architectural Review (the "commission") not to grant a
certificate of appropriateness.  Carl T. Norton, appellant, also
argues that the city ordinances at issue creating the commission
exceed the power granted by Virginia Code § 15.2-2306, and are
therefore ultra vires and void.  For the reasons discussed
below, the judgment of the trial court will be reversed.

I.  BACKGROUND AND PROCEEDINGS BELOW

Norton owns a home on Main Street in the historic district
of the City of Danville on what is commonly referred to as
"Millionaires Row."  Norton's house, constructed in 1884, is
described as an outstanding example of the Italianate style of
architecture.  Across Main Street from Norton's house is the
Sutherlin mansion which is considered to be the best example of
Italianate architecture in the city.

During the spring and summer of 2001, Norton's house was burglarized on three separate occasions. That fall, upon the recommendation of Danville police, Norton replaced the existing wooden front door of his home with a door containing glass panes to help officers patrolling Norton's neighborhood see into the house.

Approximately four months after the installation of the new glass door, Kenneth C. Gillie, Jr. ("Gillie"), the director of the Danville Planning Division and the city's zoning administrator, drove by Norton's home and saw the new door. Gillie sent a letter to Norton informing him that he would need to obtain a certificate of appropriateness from the commission if he wanted to keep the glass-paned front door. Otherwise, Norton would have to reinstall a wooden door or be subject to a criminal charge.

The city council established the seven-member commission pursuant to Code § 15.2-2306 to review improvements made in the Danville historic district within view of a public right-of-way or place. For any such improvement to be lawful, the commission must issue a certificate of appropriateness.

In March 2002, the commission denied Norton's application for a certificate of appropriateness for the glass-paned front door. The commission instructed Norton to restore the front door to its "original condition," which the commission

2

determined to be a wooden door with no glass panes.  Norton reapplied for a certificate of appropriateness which the commission again denied in May 2002 with a commission member stating the Norton home was "perhaps one of the few remaining original wooden door houses in this City."

Norton appealed the commission's decision to the city council, which affirmed the commission's decision, noting "the CAR [the commission] feels the door was wooden when it was built."  Neither the commission nor the city council recited a factual basis for determining the appearance or composition of the original door or whether it was indeed a solid wooden door at the time the house was built.

As authorized by the city code, Norton appealed to the Circuit Court of the City of Danville, arguing the commission's action was "arbitrary."  Norton also averred the applicable municipal ordinances exceeded the power granted by state statute rendering those ordinances, and the actions taken under them, ultra vires and void.  In affirming the city council decision, the trial court ruled that the issue of whether Norton's home should have a glass front door was fairly debatable and therefore "the Court cannot substitute its judgment for that of City Council."  We awarded Norton this appeal.

II. ANALYSIS

3

We have not previously examined the scope of judicial review under the historical preservation area statute, Code § 15.2-2306. Accordingly, we begin our analysis with Norton's challenge to the validity of the municipal ordinances, enacted pursuant to that statute, which is the basis of his initial assignments of error.[1]

### A. Validity of the Municipal Ordinances

Virginia Code § 15.2-2306(3) and Danville City Code § 41-109 authorize a limited appeal from the city council's decision regarding historic preservation matters. In pertinent part, Virginia Code § 15.2-2306(3), states:

> The court may reverse or modify the decision of the governing body, in whole or in part, if it finds upon review that the decision of the governing body is contrary to law or that its decision is arbitrary and constitutes an abuse of discretion, or it may affirm the decision of the governing body.

Code § 15.2-2306(3). Accordingly, the Danville City Code provides that a person aggrieved by a final decision of the city council may file a petition with the circuit court as follows:

> The Circuit Court may reverse or modify the decision of the City Council, in whole or in part, if it finds upon review that the decision of the City Council is contrary to law or that its decision is arbitrary and constitutes an abuse of discretion; or, it may affirm the decision of the City Council.

---

[1] In various iterations, Norton assigns error to the enactment of the city ordinances regarding the establishment of the commission, and its actions in his case, as ultra vires acts and void under the Dillon rule.

4

Danville City Code § 41-109.[2]

Similar to a board of zoning appeals, an architectural review commission "is a creature of statute possessing only those powers expressly conferred upon it." Lake George Corp. v. Standing, 211 Va. 733, 735, 180 S.E.2d 522, 523 (1971). In Board of Zoning Appeals v. University Square Associates, 246 Va. 290, 435 S.E.2d 385 (1993), this Court held that judicial review of a decision of a board of zoning appeals is limited to the issues delineated in the statute governing the appeal to a circuit court. We recognized under the limited standard of review provided in the statute governing zoning appeals, "the certiorari process does not authorize a trial court to rule on the validity or constitutionality of legislation underlying a board of zoning appeals decision." Id. at 294, 435 S.E.2d at 398. Therefore, "a party seeking judicial review of a board of zoning appeals decision may not challenge the validity of underlying zoning legislation." Id. at 295, 435 S.E.2d at 388. The same analysis applies in judicial review of a governing body's decision derived from an architectural review commission action.

The historical preservation area statute, Code § 15.2-2306(3), limits judicial review of a governing body's decision

_____

[2] Danville City Code Section 41-408 authorizes the initial appeal of a commission action to city council.

5

to whether that decision is "arbitrary and constitutes an abuse of discretion," or "is contrary to law," similar to the standards applied by the courts in reviewing zoning decisions under Code § 15.2-2314.  As in University Square Associates, Norton's challenge to the underlying ordinance as ultra vires and violative of the Dillon rule,[3] is barred from consideration in judicial review of the city council's action concerning the certificate of appropriateness.  Code § 15.2-2306(3), and the derivative municipal ordinance, grant the trial court authority to review the city council's specific act under the ordinance, not the validity of the ordinance itself.[4]  Therefore, we do not consider Norton's initial assignments of error because they are beyond the scope of review authorized by Code § 15.2-2306.

B. The City Council's Actions as Arbitrary and Unreasonable

Norton's remaining assignment of error challenges the city council's action on the certificate of appropriateness as "arbitrary and unreasonable."  He contends his evidence showing city council's action was unreasonable was not met by evidence

---

[3] The Dillon rule provides that municipal corporations possess and can exercise only those powers expressly granted by the General Assembly, those necessarily or fairly implied therefrom, and those that are essential and indispensable.  City of Richmond v. Confrere Club of Richmond Virginia, Inc., 239 Va. 77, 79, 387 S.E.2d 471, 473 (1990).

[4] If Norton wished to challenge the underlying ordinance, he could have done so in a direct action against the city council. University Square Associates, 246 Va. at 295 n.2, 435 S.E.2d at 388 n.2.

of reasonableness by the city council so as to make the issue fairly debatable. Norton avers the trial court's holding to the contrary is reversible error. For the reasons discussed below, we agree with Norton.

"When a governing body of any locality reserves unto itself the right to issue special exceptions, the grant or denial of such exceptions is a legislative function." Board of Supervisors v. McDonald's Corp., 261 Va. 583, 589, 544 S.E.2d 334, 338 (2001) (citing Cole v. City Council of Waynesboro, 218 Va. 827, 837, 241 S.E.2d 765, 771 (1978)). Such legislative actions are presumptively correct. Id.; see also County of Lancaster v. Cowardin, 239 Va. 522, 525, 391 S.E.2d 267, 269 (1990). We have often acknowledged this presumption in cases involving applications for "deviations" from zoning regulations. See e.g., Board of Supervisors v. Robertson, 266 Va. 525, 532, 587 S.E.2d 570, 575 (2003); see generally Board of Supervisors v. Stickley, 263 Va. 1, 556 S.E.2d 748 (2002). The city council's legislative action regarding Norton's application for a certificate of appropriateness is analogous and subject to the same presumption and standard of review.

"Legislative action is reasonable if the matter in issue is fairly debatable." Board of Supervisors v. Lerner, 221 Va. 30, 34, 267 S.E.2d 100, 102 (1980). An issue may be said to be "fairly debatable when the evidence offered in support of the

7

opposing views would lead objective and reasonable persons to reach different conclusions." Board of Supervisors v. Williams, 216 Va. 49, 58, 216 S.E.2d 33, 40 (1975). "The burden of proof is on him who assails it to prove that it is clearly unreasonable, arbitrary or capricious, and that it bears no reasonable or substantial relation to the public health, safety, morals, or general welfare." Turner v. Board of Supervisors, 263 Va. 283, 288, 559 S.E.2d 683, 686 (2002).

As we stated in Board of Supervisors v. Snell Constr. Corp., 214 Va. 655, 202 S.E.2d 889 (1974):

> Where presumptive reasonableness is challenged by probative evidence of unreasonableness, the challenge must be met by some evidence of reasonableness. If evidence of reasonableness is sufficient to make the question fairly debatable, the ordinance 'must be sustained'. If not, the evidence of unreasonableness defeats the presumption of reasonableness and the ordinance cannot be sustained.

Id. at 659, 202 S.E.2d at 893; see also Board of Supervisors v. Jackson, 221 Va. 328, 333, 269 S.E.2d 381, 385 (1980).

As the applicant for a certificate of appropriateness, Norton bore the burden of presenting evidence that the city council's actions were unreasonable. If Norton presented such evidence, the burden shifted to the city council to produce some evidence that its actions were reasonable thereby rendering the issue fairly debatable. In this case, the city council failed to meet its evidentiary burden.

8

Norton presented evidence to the trial court that many other houses in the historic preservation district had glass doors. A house of similar Italianate style, the Sutherlin mansion, directly across the street from Norton's home, had a wooden door facing Main Street but commercial glass doors on a side entrance visible from a public street. He also produced evidence showing his home has three other glass doors, besides the front door at issue, which are visible from the street.

Norton called Gillie as a witness during the trial, who testified as follows on direct examination:

> Q. What evidence do you have to show that the initial door was all wood?
> A. We have seen photos of the door that was all wood. I have seen the door personally and it was all wood.
> Q. Well, when was the house built?
> A. In the 1880s.
> Q. 1884?
> A. Somewhere around that.
> Q. So you weren't around in 1884, you didn't see the doors?
> A. No, sir.
> Q. When you say "initially," you mean the way it was when you first saw it?
> A. Yes.
> Q. You don't know what it was initially?
> A. No.
> Q. But you're saying the reason that you eliminated the glass part was that initially it had wooden doors.
> A. To the best of my knowledge, it had wooden doors.
> Q. And that's to your knowledge?
> A. Yes.
> Q. And you first saw it when?
> A. 1992.

Norton thus met his burden to show probative evidence of unreasonableness in the city council's action to compel him to install a wooden door. Norton's evidence reflected that the commission and the city council acted to compel him to install a wooden door on the unsupported supposition such a door existed in 1884, although no evidence directly established that the house featured a wooden door before 1992.

To meet Norton's evidence of unreasonableness, the city council was obligated to put forth some evidence of reasonableness for its decision in order to carry its burden to render the matter fairly debatable. Despite this low threshold, the city council failed to present evidence demonstrating that its decision was reasonable. This is due, in large part, to the fact that the city council presented no witnesses and offered no exhibits to demonstrate there was a wooden door before 1992, such as demonstrative historical photographs or similar items of evidence.

No witness testified for the city council to verify how the original nature of the door was determined. Although Norton was ordered to restore the door to its deemed original condition, the commission and the city council admitted in their proceedings that they did not know what type of door was on the house when it was originally constructed. Similarly, the city council offered no explanation why its mandate that Norton's

house have a wooden front door was reasonable, when other glass-paned doors on the house are clearly viewable by the public.

The city council did not meet Norton's evidence that its actions were unreasonable with evidence of reasonableness. The trial court thus erred in concluding the issue was fairly debatable because the city council failed to meet its burden of proof. As a matter of law, the trial court could not conclude the issue was fairly debatable because the city council adduced no evidence of reasonableness.

### III. Conclusion

For these reasons, we conclude the trial court could not in this proceeding consider Norton's challenges to the validity of the Danville City ordinances. We also conclude that the city council failed to meet its evidentiary burden to demonstrate that its actions were reasonable in affirming the commission's refusal to grant the certificate of appropriateness. Accordingly, the trial court erred in holding the city council's action to be fairly debatable. The judgment of the trial court will be reversed and final judgment will be entered.

Reversed and final judgment.