Present: Goodwyn, Mims, Powell, Kelsey, McCullough, and Chafin, JJ., and Russell, S.J.

THOMAS BYRNE

v. Record No. 190449

OPINION BY
SENIOR JUSTICE CHARLES S. RUSSELL
May 28, 2020

CITY OF ALEXANDRIA

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Lisa B. Kemler, Judge

This appeal arises from a judgment of the circuit court sustaining a demurrer and dismissing a landowner's appeal from the decision of the City Council in a land-use case. It presents questions whether the court erred in granting a motion craving oyer of the legislative record upon which the City Council's decision was based and in thereafter sustaining a demurrer. We conclude that the circuit court's ruling was correct and will affirm the judgment.

FACTS AND PROCEEDINGS

Thomas Byrne was the owner of a home at 420 South Lee Street that is located within the "Old and Historic Alexandria District" of the City of Alexandria. The central part of the house was built in the 1780s but the front section, added in the 1870s in the then-prevailing Victorian architectural style, faces South Lee Street.

Pursuant to Code § 15.2-2306(A)(1), the City adopted an ordinance delineating the historic district. As authorized by the statute, the ordinance provided that "no building or structure … shall be erected [within the historic district] unless approved by the review board or, on appeal, by the governing body of the locality as being architecturally compatible."

The house was in need of renovation and repairs at the time of Byrne's purchase. In compliance with the ordinance, he submitted his plans for this work to the Board of Architectural Review ("BAR"). He obtained the necessary approvals from the BAR, obtained the necessary permits and proceeded with the work. His proposals, however, did not include removal or

alteration of the existing fence along the front of the property, beside the sidewalk on South Lee Street. It had been erected about 1960 and consisted of a low brick "knee wall" surmounted by cast iron fencing. It was pierced by a single pedestrian gate. During the reconstruction of the house, Byrne demolished the existing wall and fence to permit access for the renovation work. The BAR issued a violation notice to Byrne because of his failure to obtain the approval prerequisite to the demolition and replacement of the fence.

Byrne submitted a plan to install a Victorian metal "wicket and spear" fence pierced by two gates: one a single pedestrian gate opening onto a walk leading to the front door, and the other a double gate eight feet wide opening onto an existing curb cut into South Lee Street. Byrne stated that both gates would be for pedestrian use but that an eight-foot gate would be useful for bringing large items in and out of the property.*

The BAR referred Byrne's application to the city staff, which concluded that a "wicket and spear" design was architecturally and historically appropriate but that an eight-foot wide double gate would be "completely out of scale" for pedestrian gates in the district. The BAR unanimously approved a "Certificate of Appropriateness" as to the materials and design of the fence, but with the condition that the width of the double gate not exceed six feet. A further condition was that the proposed double gate must "align with the street-facing front door or that a second gate be added that would align with the front door."

Byrne appealed the BAR's decision to the City Council. On February 24, 2018, the City Council held a public hearing on Byrne's appeal. The city staff recommended that the Council approve the BAR's Certificate of Appropriateness with conditions regarding the double gate.

---

* The City ordinance provided that in the historic district, access by motor vehicles into residential properties from the street was prohibited and could be had only from alleys or interior courtyards.

2

The Council heard testimony from the BAR, the city's planning and zoning officers, Byrne, representatives of three civic groups and members of the public.  The City Council unanimously affirmed the decision of the BAR.

Byrne appealed the City Council's decision to the Circuit Court of the City of Alexandria.  Byrne's petition contended that the decisions of the BAR and the City Council were "arbitrary, capricious, contrary to law and constituted an abuse of discretion."  In response, the City filed a demurrer and a motion craving oyer of the legislative record that had been before the City Council when it made its decision.   The court held a hearing during which it granted the motion craving oyer.  After the legislative record had been filed, the court issued a letter opinion sustaining the demurrer.  On January 9, 2019, the court entered a final order sustaining the demurrer without leave to amend and dismissing Byrne's petition with prejudice.

We awarded Byrne an appeal. He assigns two errors:  (1) that the circuit court erred in granting the City's motion craving oyer and (2) that the circuit court erred in sustaining the City's demurrer.

ANALYSIS

Both assignments of error present pure questions of law, subject to de novo review on appeal.  *See*, *e.g.*, *Webb v. Virginian-Pilot Media Cos.*, 287 Va. 84, 88 (2014).

### (1)  MOTION CRAVING OYER

The word "oyer" is of Norman French origin and means "to hear."  It is generally agreed that the motion craving oyer originated in the early years of the English common law when many litigants were illiterate. It served as a remedy for a defendant, sued on a claim based on a written document, to have the document produced in court and read aloud to him.  *See* 4 Blackstone's

3

Commentaries 299 (Tucker ed. 1803); 4 John B. Minor, Institutes of Common and Statute Law 732-33 (3d ed. 1893) (hereinafter "Minor's Institutes").

Over the succeeding centuries, in England, in colonial Virginia and up to the present day, the limitations and consequences of the remedy have evolved. A document produced in response to the motion became a part of the record. 4 Blackstone, Commentaries, at 299. It became a part of the pleadings of the party whose claim was based upon it. *Id.* If there was a "material variance" between the original claim and the produced document, or if the claim thus amplified was not cognizable in law, the opposing party's remedy was to demur and the case would be dismissed on demurrer at the pleading stage. 4 Minor's Institutes, at 733. This would serve the salutary purpose of avoiding the delay, expense and consumption of judicial resources attendant on trial preparation, trial and appeal in a case that was ill-founded in law.

This development of the oyer-demurrer remedy did not advance through the years in an orderly progression. The authorities agree that, at early common law, it was available only to compel the production of deeds, writs, bonds, letters of probate and administration and other "specialties" (referring to documents under seal). 4 Blackstone, Commentaries, at 299; Black's Law Dictionary 1571 (rev. 4th ed. 1968). However, this Court and its predecessors have expanded the remedy to include production of a much wider range of documents. *See, e.g.*, *Wood v. Commonwealth*, 25 Va. (4 Rand.) 329 (1826) (recognizance); *Commonwealth v. Cawood*, 4 Va. (2 Va. Cas.) 527, 551 (General Court 1826) (an indictment); *Greenhow v. Buck*, 19 Va. (5 Munf.) 263, 268 (1816) (an Act of Assembly); *Price v. Via*, 49 Va. (8 Gratt.) 79, 81 (1851) (an arbitration award); *Friend v. Woods*, 50 Va. (9 Gratt.) 37 (1852) (an appellate record); *Burress v. Commonwealth*, 68 Va. (27 Gratt.) 934 (1876) (pleas filed in another criminal case).

In *Welch v. McDonald*, 85 Va. 500, 504 (1888), we commented that if oyer had been craved of a construction contract, a demurrer should have been, "and doubtless would have been, sustained."

In the present case, Byrne relies on language in *Langhorne v. Richmond Ry. Co.*, 91 Va. 369, 372 (1895), to support his argument that the circuit court erred in granting the City's motion craving oyer. *Langhorne* was an action against two railroad companies to recover damages for personal injuries. The plaintiff's pleadings recounted a previous merger between the companies and referred to, but did not incorporate, a series of documents pertaining to the merger. The defendant company that survived the merger filed a demurrer accompanied by a motion craving oyer of all the documents mentioned in the plaintiff's pleadings. *Id*. at 370-72. On appeal, we held that the motion craving oyer was, on its face, without merit.

> None of these writings could have been, or could properly be, considered upon the demurrer. *The plaintiff did not claim under them.* They were mentioned in the declaration by way of inducement or introduction to other matters that it was necessary to allege and not for the purpose of showing right or title in the plaintiff.

*Id.* at 372 (emphasis added).

As noted above, the motion craving oyer has been, since the early days of the common law, a remedy afforded to a litigant who has been sued on a claim based upon a written document mentioned in a claimant's pleading but not made a part of the record. The motion should be granted only where the missing document is essential to the claim. Thus, the Court in *Langhorne* ruled that oyer was not available to the defendant for the valid reason that the railroad merger papers were not essential to the plaintiff's claim for personal injuries. "The plaintiff did not claim under them." Having disposed of the oyer motion on this traditional ground, however, the Court in *Langhorne* went on to opine:

> The right to crave oyer of papers mentioned in a pleading applies, as a general rule, only to deeds and letters of probate and administration, not to other writings. . . .

*Id.*

That sentence was dictum. Also, it failed to take account of the cases cited above (and many others) that had, for over a century, expanded the availability of oyer to obtain production of a much wider variety of documents than deeds and letters of probate and administration. It also gave rise to a period of uncertainty that clouded this subject from 1895 until 1937. We dispelled that cloud in *Culpeper National Bank v. Morris*, 168 Va. 379 (1937). There, the Bank filed suit to enforce a judgment lien, on land that had been owned by a decedent, against the executors and beneficiaries claiming under the decedent's will. *Id* at 382. The Bank's complaint alleged that the defendants had forfeited their interest in the land by a compromise agreement entered into in a different, earlier, lawsuit. *Id.* The executors and beneficiaries filed a demurrer and craved oyer of the entire record in the earlier suit. *Id.* The trial court granted oyer of the entire record in the other case and sustained the demurrer. *Id.* The Bank appealed, contending that the court had erred in granting oyer of the records of the earlier suit. *Id.* On appeal, we affirmed the trial court, writing:

> No intelligent construction of any writing or record can be made unless all essential parts of such paper or record are produced. A litigant has no right to put blinkers on the court and attempt to restrict its vision to only such parts of the record as the litigant thinks tend to support his view. *When a court is asked to make a ruling on any paper or record, it is its duty to require the pleader to produce all material parts.*

*Id.* at 382-83 (emphasis added).

We adhere to the view expressed in *Culpeper* and hold that the circuit court did not err, in the present case, in granting the City of Alexandria's motion craving oyer of the legislative record in Byrne's appeal.

(2) DEMURRER

The legislative record filed as a result of the motion craving oyer contained a number of documents, including the minutes of the initial meeting of the BAR, the recommendations of the City's staff, the minutes of the second meeting of the BAR, the transcript of the public hearing

6

held by the BAR, Byrne's appeal to the City Council, the City staff's report to the City Council, the transcript of the public hearing held by the City Council, and the minutes of the City Council's final meeting.

Code § 15.2-2306(A)(3) provides that upon appeal from a decision of a locality's governing body to the circuit court, the court may reverse the governing body's decision if the court finds on review that the decision of the governing body is "contrary to law or that its decision is arbitrary and constitutes an abuse of discretion, or it may affirm the decision of the governing body." As noted above, Byrne's appeal to the circuit court was based entirely on his contention that the Council's decision was "arbitrary, capricious, contrary to law and constituted an abuse of discretion."

A city council acting on a certificate of appropriateness performs a legislative function. *Norton v. City of Danville*, 268 Va. 402, 408 (2004). Such actions are presumed correct. *Id.* Legislative action is reasonable if the matter in issue is "fairly debatable." *Id.* at 409. An issue is fairly debatable "when the evidence offered in support of the opposing views would lead objective and reasonable persons to reach different conclusions." *Id.* Reasonable and objective persons might readily have reached different conclusions with regard to the architectural and historical appropriateness of the width and placement of Byrne's proposed gate. That issue was fairly debatable.

The legislative record added to the pleadings as a result of the motion craving oyer makes clear that the City Council, when deciding Byrne's appeal, had all the essential facts before it, considered all opinions and arguments presented by interested parties, and made its decision within its lawful authority. Thus, the circuit court correctly concluded, at the pleading stage, that

7

the council's decision was not arbitrary, capricious, contrary to law, nor an abuse of discretion.

The court did not err in sustaining the demurer.

## CONCLUSION

For the reasons stated, we will affirm the judgment of the circuit court.

*Affirmed.*