UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Ortiz and Senior Judge Annunziata
Argued by videoconference

MADERA FARM, LLC

                                         MEMORANDUM OPINION[*] BY

v.      Record No. 1242-22-4            JUDGE ROSEMARIE ANNUNZIATA
                                           OCTOBER 17, 2023

PRINCE WILLIAM COUNTY
  BOARD OF COUNTY SUPERVISORS

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Steven S. Smith, Judge

William D. Wides (Jason E. Hickman; Compton & Duling, L.C., on
briefs), for appellant.

Alan F. Smith, Deputy County Attorney (Michelle R. Robl, County
Attorney, on brief), for appellee.

The dispute in this case centers on a half-acre pile of dirt on Madera Farm's property in

Prince William County. On April 21, 2020, a zoning inspector issued a violation notice and

correction order (VNCO) to the farm for violations of County Code §§ 32-250.52 and 32-301.04

(the zoning ordinances), related to land disturbances without a permit and the delivery and storage

of "nonagricultural excavation material." The Board of Zoning Appeals (BZA) upheld the VNCO,

and the circuit court affirmed the BZA's decision upon a writ of certiorari. The farm appeals,

arguing that (1) the zoning ordinances are unconstitutional, (2) the zoning ordinances violate various

provisions of the Virginia Code, (3) the circuit court misapplied the zoning ordinances, and (4) the

circuit court wrongfully ignored or found to be expired a pre-existing land disturbance permit. For

the following reasons, we affirm.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

On appeal, we "view the facts in the light most favorable to" the County, "the prevailing party below." *Koons v. Crane*, 72 Va. App. 720, 732 (2021). The farm is zoned "A-1 Agricultural" and is part of the County's Agricultural and Forestal District. The A-1 agricultural zoning district was designed to encourage conservation and to "create an environment favorable for the continuation [of] farming and other agricultural pursuits." County Code § 32-301.01.

On April 17, 2020, zoning administrator Brian Sonnenberg inspected the farm's property after he received "numerous complaints" about an "extreme amount of trucking activity." Based on the complaints, Sonnenberg went to a "commercial construction site" at a "business park" with no agricultural activity and saw a dump truck belonging to an excavation company "gett[ing] loaded with soil." Sonnenberg followed the dump truck to the farm, where it entered with a full load and exited empty. Sonnenberg then followed the truck back to the construction site, where it "was loaded for the second time." The dump truck returned to the farm, where it again entered with a "full load" and exited empty. Sonnenberg ultimately saw and photographed 17 dump trucks enter the farm with dirt and leave empty.

Sonnenberg contacted Environmental Services, an agency that required a land disturbance permit for any land disturbance more than 2,500 square feet. Marc Aveni, the then-County Director of Environmental Services,[1] arrived, walked onto the neighboring parcel of land with Sonnenberg, and discerned that the dump trucks were depositing the dirt onto a pile that was "well over [2,500] square feet." The farm did not have a land disturbance permit or a special use permit to allow more than 15 dump trucks per day for deliveries of nonagricultural excavation material. The farm previously had held an agricultural exemption for the property, granted in February 2012, to build

---

[1] On the date of the circuit court hearing, Aveni was the Loudoun County Director of Environmental Services.

agricultural buildings, clear "land for pasture use," install "fencing," and construct "a farm road." The approved work for that exemption was scheduled to conclude by November 1, 2012. The exemption did not mention receiving or reselling off-site dirt.

On April 21, 2020, Sonnenberg issued a VNCO to the farm for violations of the County's zoning ordinances, specifically County Code §§ 32-250.52 and 32-301.04. The County alleged that in a single day the farm received more than 15 dump truck deliveries of nonagricultural excavation material that was not generated on the farm and that it had done so without a special use permit. The County also alleged that the farm conducted land disturbance activity exceeding 2,500 square feet without a land disturbance permit or other county approval. The VNCO required the farm to reduce the number of dump truck deliveries or obtain a special use permit, and immediately stop all land disturbance activity, obtain required permits, and implement erosion controls.

The farm appealed the violations to the BZA, arguing that it was storing topsoil, not "nonagricultural excavation material," and that the violations unreasonably interfered with its agricultural and silvicultural activities on its property. The BZA staff report found that the activities Sonnenberg observed on April 17, 2020, were not within the County Code's definition of "agriculture" or "nursery" but were instead associated with landscaping services, not a permitted use in the A-1 zoning district. Landscaping services within an A-1 district required a special use permit. *See* County Code § 32-301.02(8). The staff report also found that the farm's agricultural exemption was approved on February 12, 2012, and expired on November 1, 2012. After a hearing, the BZA passed a resolution affirming the zoning administrator's decision.

The farm appealed the BZA's decision to the circuit court, alleging nine "counts" of grievance. The farm argued that it was importing topsoil, not "nonagricultural excavation material," so its activities were permitted under the zoning ordinance. It also argued that the County could not require it to obtain a special use permit for agriculture and silviculture activity under County Code

§ 32-301 and Code §§ 15.2-2288 and 15.2-2288.6. Indeed, the farm insisted that because the County had authorized the farm to be used for agricultural production, it could not now restrict the agricultural production by forbidding importing and storing of "topsoil." Next, the farm argued that it was exempt from County Code § 32-250.52's prohibition on "land disturbing activity" because "agricultural operations" are expressly excluded from the definition of "land disturbing activity." It also maintained that it had been granted an "open-ended land disturbance exception" in February 2012 that did not have a termination date.[2]

At a hearing, the parties stipulated that more than 15 dump trucks made deliveries to the farm on April 17, 2020, that the farm did not have a special use permit, and that there was a land disturbance greater than 2,500 square feet on the property on April 17, 2020. Aveni testified that he went to the farm in June 2020, to render an "opinion" on the farm's agricultural exemption and whether there was any land disturbing activity on the farm. Aveni saw a pile of dirt on the property, approximately a half-acre in size. Aveni stated that the pile was not covered under the agricultural exemption and required a land disturbance permit. Aveni testified that the pile was not mentioned in the 2012 agricultural exemption and activity in 2020 was not within the time frame of the work contemplated in the agricultural exemption. Aveni also stated that the pile was also not exempt from stormwater management and erosion and sediment control.

The managing member of the farm, Jacob Klitenic, testified that he was never told that the farm's February 2012 agricultural exception had expired and that the activities specified in the exception were ongoing. Klitenic testified that the farm produced mulches, compost, and soil products for sale and that all activities were classified as agricultural forestry activity. Klitenic

---

[2] The farm agreed that its ninth "claim," that the BZA's ruling constituted an unconstitutional taking, would not ripen until after the circuit court's hearing on the remaining eight counts. Accordingly, the circuit court bifurcated that claim until after it addressed the first eight counts.

testified that the trucks were delivering topsoil for use on the farm and in compost, topsoil, and nursery products that the farm sold. Klitenic claimed that "nonagricultural excavation material" was different from topsoil. Soil testing performed on a sample from the pile indicated that the soil was "strong brown sandy organic silt" which could be used as topsoil and in part of a normal farm supply operation. It could not be used in construction to "fill" for buildings or roads.

The circuit court affirmed the BZA decision, finding that the dirt was nonagricultural and not generated on the farm. The court found that this case was "not about . . . the makeup of the soils." Moreover, the court found that Sonnenberg and Aveni's observations demonstrated that the pile was "not exempt." The circuit court ordered the farm to comply with County Code §§ 32-301.04(33) and 32-250.52, "including, but not limited to, obtaining an approved land disturbance permit . . . and implementing erosion and sediment controls."

The farm noted an appeal of the circuit court's decision to the Supreme Court on May 28, 2021.[3] The Supreme Court dismissed the farm's appeal without prejudice, finding that the May 3, 2021 circuit court order was not a final, appealable order because the circuit court had not disposed of the farm's ninth count. On August 3, 2022, the circuit court entered an "Agreed Final Order" that disposed of the ninth count as "not properly before the [c]ourt." The farm timely noted its appeal to this Court on August 18, 2022.

On appeal, the farm first argues that County Code §§ 32-250.52 and 32-301.04 are unconstitutional and invalid as inconsistent with Dillon's Rule, state law, and public policy. It asserts that the County lacked the authority to create a zoning ordinance that restricts the type of materials used for agricultural and forestal production. Moreover, it contends that the ordinances are unconstitutionally vague, void, and/or unenforceable because they impose arbitrary and vague

_____

[3] When the notice of appeal was filed, this Court did not have jurisdiction over this appeal. This Court's jurisdiction was expanded effective January 1, 2022, to encompass this appeal. *See* Code § 17.1-405; 2021 Va. Acts Spec. Sess. I ch. 489.

limits on the use of land. The farm also argues that the ordinances are invalid because they: (1) require a special use permit for production of agricultural or silviculture activity in an area zoned as an agricultural district, and (2) violate the express provisions and stated public policy of the Right to Farm Act, Code § 3.2-300. The farm acknowledges that under Supreme Court precedent those arguments are not "appropriately brought before" this Court but nevertheless includes them "to preserve [its] ability to raise th[e] issue before the Supreme Court."[4]

Next, the farm argues that the circuit court erred in upholding the BZA's decision that it was in violation of County Code § 32-301.04(33) "because there was no evidence presented and no finding that nonagricultural excavation materials were brought onto the property." It maintains that the dirt was topsoil and the trial court erroneously held that the content and composition of the dirt was irrelevant. The farm also argues that the circuit court erred when it found the farm in violation of County Code § 32-250.52 because it had an "existing land disturbance permit" and was not informed that the permit had expired. It further argues that it was operating under Code § 62.1-44.15:51, which excluded it from the land use permit requirement.

ANALYSIS

I. Validity and Constitutionality of the County's Zoning Ordinances

A board of zoning appeals "is a creature of statute possessing only those powers expressly conferred upon it." *Lake George Corp. v. Standing*, 211 Va. 733, 735 (1971). "Upon the presentation of [a] petition, the [circuit] court shall allow a writ of certiorari to review the decision of the board of zoning appeals." Code § 15.2-2314. "Any review of a decision of the board shall not be considered an action against the board." *Id.* "[T]he certiorari process does not authorize a trial court to rule on the validity or constitutionality of legislation underlying a board of zoning appeals decision." *Bd. of Zoning Appeals of James City Cnty. v. Univ. Square Assocs.*, 246 Va. 290,

---

[4] The farm does not ask this Court to overturn existing precedent.

294 (1993). "Therefore, 'a party seeking judicial review of a board of zoning appeals decision'" by a circuit court "'may not challenge the validity of underlying zoning legislation.'" *Norton v. City of Danville*, 268 Va. 402, 407 (2004) (quoting *Univ. Square Assocs.*, 246 Va. at 295). Instead, the constitutionality and validity of an ordinance must be challenged in a direct action against the County. *Id.* at 408 n.4.

Consistent with those principles, the Supreme Court has reversed a circuit court's holding that a zoning ordinance was vague and unenforceable because the court did not have the authority to declare a regulation unenforceable upon a "writ of certiorari to review the decision of the board of zoning appeals." *Univ. Square Assocs.*, 246 Va. at 293-95. Similarly, the Supreme Court has held that a "challenge to the underlying [municipal] ordinance as *ultra vires* and violative of the Dillon rule is barred from consideration in judicial review." *Norton*, 268 Va. at 408.

The farm's challenges to the underlying ordinances as unconstitutionally "vague, void, and/or unenforceable," violative of the Dillon rule, and invalid as inconsistent with state law and policy are well outside the scope of review authorized by Code § 15.2-2314. In fact, "the only issue[s] properly before the [circuit] court," and before this Court on appeal, "[were] whether the BZA's decision was plainly wrong or applied erroneous principles of law." *Univ. Square Assocs.*, 246 Va. at 295. In other words, a court may review the BZA's "specific act under the ordinance, not the validity of the ordinance itself." *Norton*, 268 Va. at 408. Thus, we do not consider the farm's arguments that challenge the constitutionality and validity of the underlying ordinances and are, therefore, not cognizable in this appeal.

## II. Non-agricultural Excavation Materials

"[T]he decision of the [BZA] is presumed to be correct on appeal to a circuit court; the appealing party bears the burden of showing that the board applied erroneous principles of law or that its decision was plainly wrong." *Univ. Square Assocs.*, 246 Va. at 295 (quoting *Masterson v.*

*Bd. of Zoning Appeals*, 233 Va. 37, 44 (1987)).  The farm argues that the circuit court erred in affirming the BZA because no evidence established that nonagricultural excavation materials were brought to or stored on the property.

The A-1 agricultural zoning district was designed to encourage conservation and to "create an environment favorable for the continuation [of] farming and other agricultural pursuits."  County Code § 32-301.01.  In the A-1 district, nursery or greenhouse uses, selling only produce, flowers or other plant life are permitted, but landscaping businesses and garden centers are permitted only by a special use permit.  County Code §§ 32-301.02(8), 32-301.04(15), (18).  Generally, a zoning ordinance may not require that a "special exception or special use permit be obtained for any production agriculture or silviculture activity in an area that is zoned as an agricultural district or classification."  Code § 15.2-2288.  But "production agriculture and silviculture . . . [do] not include . . . the storage or disposal of nonagricultural excavation material."  *Id.*  Thus, County Code § 32-301.04(33) permissibly requires a special use permit for "[s]torage or disposal of nonagricultural excavation material, if the excavation material is not generated on the farm" and the "actual number of dump truck deliveries of stored or disposed nonagricultural excavation material transported to the property exceeds 15 deliveries [per] day."  "Nonagricultural excavation material shall include only soil and rock."  *Id.*

The farm stipulated that soil from more than 15 dump trucks was delivered to the property and that it did not possess a special use permit for those deliveries.  In addition, the farm's contention that the soil was not nonagricultural excavation material is without merit.  Although the farm insists that nonagricultural excavation material was different from topsoil, the County Code defines nonagricultural excavation material broadly as "only soil and rock."  *Id.*  Thus, the County ordinance does not differentiate based on types of soil.  Moreover, the record demonstrates that the soil originated not from agricultural activity but from a "commercial construction site" at a

"business park." Indeed, Klitenic admitted at trial that the soil hauled to the farm was used for items the farm offered for sale. Thus, the record supports the circuit court's finding that the soil was nonagricultural and not generated on the farm.

### III. Land Disturbance

"No person may engage in any land disturbing activity in any zoning district, except as permitted by this chapter, until the area is the subject of an approved site development permit, land disturbance permit, or similar County approval." County Code § 32-250.52(1). A land disturbance equal or greater than 2,500 square feet and less than an acre is subject to additional control plans. County Code § 23.2-24(b). A "land disturbing activity" is "any land change which may result in soil erosion from water or wind and the movement of sediment into state waters or other property. This term includes, but is not limited to, clearing, grading, excavating, transporting, and filling of land." County Code § 32-100. "Clearing of lands specifically for agricultural purposes and the management, tilling, planting, or harvesting of agricultural, horticultural, or forest crops, livestock feedlot operations" and certain "engineering operations" are exempt from land disturbance permitting requirements. County Code § 23.2-24(c)(2); *see also* Code § 62.1-44.15:51(6) (exempting "[t]illing, planting, or harvesting of agricultural, horticultural, or forest crops, livestock feedlot operations" and certain "engineering operations" from the definition of "land-disturbing activity").

The farm stipulated that there was a land disturbance greater than 2,500 square feet on its property on April 17, 2020. Indeed, Aveni testified that he observed a pile of dirt on the farm, approximately a half-acre in size. Aveni explained that the pile was not exempt from stormwater management and erosion and sediment controls and that the soil pile required a land disturbance permit. Nevertheless, the farm argues that the circuit court erred in affirming the BZA's decision regarding the land disturbance violation. It insists that it had an existing land disturbance permit,

"which was in actuality an agricultural exemption to the requirements of obtaining a land disturbance permit" and the County did not notify the farm that it had expired. We disagree.

The farm's land disturbance agricultural exemption expired in November 2012; it did not authorize a pile of dirt on the property eight years later. Indeed, the exemption was specific regarding both its scope and applicable duration. It permitted two agricultural buildings, clearing land for pasture use, installing fencing, and constructing a road—it did not contemplate a half-acre pile of dirt. In addition, although Klitenic testified that he was never told that the exemption had expired, his original application for the exemption indicated the work would be complete by November 2012, and the County expected the work to be completed within a year. Under those circumstances, the circuit court did not err by holding that the exemption did not apply to storing a half-acre pile of dirt on the property eight years after it was issued.

The farm also asserts that County Code § 23.2-24 and Code § 62.1-44.15:51 exempted their activity from the land disturbance permit requirement. Again, we disagree. The ordinance and Code exempt the "[t]illing, planting, or harvesting of agricultural, horticultural, or forest crops, livestock feedlot operations" and certain "engineering operations" from the definition of "land-disturbing activity." Code § 62.1-44.15:51(6); County Code § 23.2-24(c)(2). The pile on the farm's property, however, was imported from a construction site and used to produce mulch, compost, and soil products for sale. Although Klitenic claimed that those activities were classified as agricultural forestry activity, producing soil products for sale is landscaping activity for which a special use permit is required, not an agricultural purpose within the scope of Code § 62.1-44.15:51 and County Code § 23.2-24(c)(2). Indeed, those provisions contemplate land disturbance for the management of crops and feed, not the importation of dirt to process and sell. Thus, the circuit court did not err in affirming the BZA's decision upholding the VNCO.

## CONCLUSION

For the foregoing reasons, we affirm the circuit court's judgment.

*Affirmed.*