UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges Beales, Fulton and Lorish
Argued at Fredericksburg, Virginia


RITA M. LEACH-LEWIS, TRUSTEE OF THE
  RITA M. LEACH-LEWIS TRUST 18MAR13
                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 0815-22-4                       JUDGE LISA M. LORISH
                                                         JUNE 13, 2023
BOARD OF SUPERVISORS OF FAIRFAX
  COUNTY, VIRGINIA


                  FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                              Tania M.L. Saylor, Judge

            Gifford R. Hampshire (James R. Meizanis, Jr.; Blankingship &
            Keith, P.C., on briefs), for appellant.

            Sara G. Silverman, Assistant County Attorney (Elizabeth D. Teare,
            County Attorney; T. David Stoner, Deputy County Attorney, on
            brief), for appellee.


        In August 2019, officials from the Fairfax County Department of Code Compliance

received a tip from law enforcement officers planning to execute a criminal search warrant on a

home in Fairfax County.  Acting on the tip, which included allegations of zoning violations at

that home and a neighboring property (each owned by Rita Leach-Lewis), code compliance

officials conducted warrantless searches of both residences.  Leach-Lewis was later cited for

using the homes as offices for the New World Church of Christ in a zoning district that did not

permit office use.

        Leach-Lewis appealed these violation notices to the Fairfax County Board of Zoning

Appeals (BZA) and argued the warrantless searches violated Fairfax County Zoning Ordinance

_____
[*] This opinion is not designated for publication.  *See* Code § 17.1-413.

(FCZO) § 18-901(4),[1] which prohibits unconstitutional searches. She also argued that church operations did not qualify as "office" use. The BZA found it was not their "issue to reach the propriety of the search," and otherwise agreed that the church operations were consistent with "office" use. The Fairfax County Circuit Court affirmed, agreeing the BZA was not required to consider FCZO § 18-901(4). We conclude it was an abuse of discretion for the BZA to ignore the ordinance, and we reverse with instructions to remand to the BZA to consider FCZO § 18-901(4).

BACKGROUND

Leach-Lewis operates the New World Church of the Christ from two residential homes she owns that are located at 6209 and 6211 Knoll View Place in Fairfax County. At the time the properties were inspected, "volunteers"—paid a monthly stipend—would regularly come to the houses to work on church activities. At any given time, the two properties would host about six volunteers who produced publications for the church, answered correspondence, and provided spiritual direction to parishioners. Leach-Lewis lived at 6209 Knoll View Place, and a church volunteer resided at 6211.

In the summer of 2019, the Fairfax County Police Department investigated a church volunteer for illegal conduct pertaining to child pornography. During their investigation, they obtained a search warrant for the home at 6209. Before executing that warrant, the police tipped off the Fairfax County Department of Code Compliance that there may be zoning violations occurring at 6209 and other nearby homes, but they clarified that the zoning department could "not go off their warrant."

---

[1] We refer exclusively to the version of the FCZO in effect at the time the notices of violation were issued. Fairfax County, Zoning Ordinance Reprint (June 30, 2021), https://online.encodeplus.com/regs/fairfaxcounty-va/doclibrary.aspx?id=922528cd-6de4-4112-8678-79e8ed26a092.

According to Fairfax County, code compliance investigators arrived at 6209 on the morning of the police department's search and obtained Leach-Lewis's consent to investigate the suspected zoning violations at both 6209 and 6211. According to Leach-Lewis, one of the compliance investigators—John Enos[2]—entered 6209 while she was actively detained by the police during the execution of the search warrant, and she did not consent to a search.[3]

Enos testified that after the search of 6209 and 6211, Leach-Lewis agreed to a follow-up inspection of surrounding properties the next day. According to Enos, he was joined at this inspection by other members of the church, some of whom asked him to conduct "another inspection" of 6211 for something "to do with firearms." Enos testified that, although "that wasn't really [his] . . . aspect of [the] investigation," he "went and took pictures just in case it was needed."

Following Enos's inspections, Leach-Lewis received notices of violation for 6209 and 6211, citing her for violating the FCZO, which prohibits "office" uses in a residential conservation district.[4]

Leach-Lewis appealed the violations to the BZA, arguing that (1) the evidence from the inspections should be suppressed because they were not conducted pursuant to a valid "warrant, court order, consent, or another exception to the warrant requirement" as required by FCZO

---

[2] There is a dispute in the record as to the presence of another investigator, Chip Moncure. Enos testified that Moncure arrived at 6209 and obtained consent for both he and Enos to enter the home and that he first encountered Leach-Lewis while she was meeting in the home with Moncure. Leach-Lewis flatly denies ever encountering Moncure.

[3] As neither the trial court nor the BZA considered the circumstances of the search, we repeat this factual discrepancy as it has been presented by the parties.

[4] The notice of violation for 6211 also included violations—not at issue here—relating to unauthorized accessory storage structures.

§ 18-901(4); and (2) the church operations in the two properties do not constitute an "office" use under the terms of the zoning ordinance.

The BZA staff report found that significant portions of the two properties were converted into office space, and "activities being conducted there included generating correspondence to various regions across the globe to raise funds and conduct church business."[5] Furthermore, "non-resident employees" regularly carried out "the correspondence and conduct[ed] the church business within the dwellings." The BZA staff report also concluded that Leach-Lewis consented to the code compliance investigator's inspections. Leach-Lewis argued that the church was not a "business" because it was a "religious/missionary activity" and that she never consented to the searches.

After a hearing, the BZA affirmed the zoning administrator, voting to approve the following oral motion made by a BZA member:

> I will move that we uphold the determination of the Zoning Administrator, adopting the rationale of the staff report. As I indicated, I think that . . . it's not our issue to reach the propriety of the search or the police actions on the day of the SWAT team raid. That's for a judge, and we deal with the Zoning Administrator's determination only.
>
> On the record before us, I don't think it's been shown that the Zoning Administrator was plainly wrong. We have a prior determination. We have abundant evidence, photographs and testimony of witnesses about the activity. Using common sense, I think it is an office activity. The definition does not distinguish between profit and non-profit and religious and non-religious. It's an office, and so I think the determination was correct on both and should be upheld.

---

[5] Under the FCZO, an "office" includes any building "wherein the primary use is the conduct of a business such as accounting, correspondence, research, editing, administration or analysis."

- 4 -

Leach-Lewis appealed the BZA's decision to the circuit court, which affirmed the BZA after a trial.

The circuit court found that the BZA did not err in finding that the properties at 6209 and 6211 are offices under the FCZO. It also found that "even if the BZA has the authority to adjudicate the constitutional issue of a proper search, it is not required to make such a finding as illustrated by Virginia Code § 15.2-2309."

Leach-Lewis noted this appeal.

ANALYSIS

Leach-Lewis argues the trial court erred "in ruling that the BZA was not required to address the appeal of the administrative officer's decision to issue the Notice of Violation in contradiction to Zoning Ordinance § 18-901(4) that requires adherence to Fourth Amendment constitutional requirements of a proper search." FCZO § 18-901(4) states: "All searches or inspections authorized by this Ordinance require a warrant, court order, consent, or another exception to the warrant requirement" and "[n]othing in this Ordinance may be construed to authorize an unconstitutional inspection or search." Fairfax County argues in response that Leach-Lewis's "claim of an unconstitutional search was not appealable to the BZA under Virginia Code §§ 15.2-2309 and -2311, or to the Circuit Court under § 15.2-2314."

We find that the BZA had a duty to interpret and apply FCZO § 18-901(4) in adjudicating Leach-Lewis's claim and that the BZA's failure to do so is appealable under Code § 15.2-2309(1). Because we reach this conclusion, and remand for further proceedings, we do not consider Leach-Lewis's argument that the church's activities do not qualify as "office" use under the FCZO.

- 5 -

I. The BZA abused its discretion by failing to follow the requirements of Code § 15.2-2309(1).

"The ability to regulate the use of land is part of the police power vested in the legislature which can, in turn, be delegated to local governing bodies." *Helmick v. Town of Warrenton*, 254 Va. 225, 229 (1997). The General Assembly has delegated such authority in Chapter 22 of Title 15.2 of the Virginia Code, empowering localities to enact zoning ordinances classifying "the territory under its jurisdiction or any substantial portion thereof into districts of such number, shape and size as it may deem best suited to carry out the purposes of this article." Code § 15.2-2280. Relevant here, the General Assembly also specifically authorized the creation of zoning ordinances to govern "the issuance of inspection warrants by a magistrate or court of competent jurisdiction." Code § 15.2-2286(A)(16).[6]

The General Assembly also created local boards of zoning appeals to oversee the work of administrators enforcing the locality's zoning ordinance. Code § 15.2-2308. These boards, usually consisting of five or seven residents appointed by the local circuit court, have several "powers and duties," including hearing applications for variances, special exceptions, and interpretations of district maps. Code § 15.2-2309.

Under Code § 15.2-2309(1), local boards of zoning appeals have both the "power[]" and "dut[y]" to "hear and decide appeals from any order, requirement, decision, or determination made by an administrative officer in the administration or enforcement of this article or of any ordinance adopted pursuant thereto." The BZA "shall consider any applicable ordinances, laws, and regulations in making its decision." *Id.*

---

[6] This provision continues, stating that after making a "reasonable effort to obtain consent" from a landowner, a zoning administrator may "make an affidavit . . . and, if such affidavit establishes probable cause that a zoning ordinance violation has occurred, request that the magistrate or court grant . . . [the] warrant." Code § 15.2-2286(A)(16).

Complementing this duty is the right of anyone aggrieved by "any decision of the zoning administrator" or "from any order, requirement, decision or determination made by any other administrative officer in the administration or enforcement of this article," to appeal to the BZA. Code § 15.2-2311. In turn, an individual "aggrieved by any decision of the board of zoning appeals" may appeal the decision to circuit court upon a writ of certiorari. Code § 15.2-2314.

Leach-Lewis alleges that Enos violated FCZO § 18-901(4) when he decided to conduct a warrantless search of her homes and when he issued two notices of violation based on evidence obtained in contravention of the ordinance. She further alleges that the BZA erred by concluding it was not obligated to consider whether a zoning official violated FCZO § 18-901(4), or the effect of that violation.

We agree that the BZA was obligated to consider FCZO § 18-901(4) in adjudicating the "decision" or "determination" Leach-Lewis appealed from—the notices of violation. Leach-Lewis argues these determinations followed Enos's decisions to conduct warrantless searches. Under the plain language of the statutes, the BZA had a "duty" to "hear and decide" Leach-Lewis's challenge to the zoning violations, and in doing so, it was required to "consider any applicable ordinances, laws, and regulations." Code § 15.2-2309(1). That includes FCZO § 18-901(4).

The County defends the BZA's decision to ignore FCZO § 18-901(4) and decline to adjudicate Leach-Lewis's challenge to the zoning inspector's warrantless search by arguing that constitutional issues are not appealable to the BZA. The County looks for support from prior decisions affirming that Code § 15.2-2314 does not "authorize a trial court to rule on the validity or constitutionality of legislation underlying a board of zoning appeals decision." *Bd. of Zoning Appeals of James City Cnty. v. Univ./Square Assocs.*, 246 Va. 290, 294 (1993); *see also City of Emporia Bd. of Zoning Appeals v. Mangum*, 263 Va. 38, 43-44 (2002) (in challenging city

- 7 -

manager's decision to bar nonconforming use, petitioner could not allege constitutional defects in the ordinance underlying the decision).

But unlike the petitioners in *University Square* or *Mangum*, Leach-Lewis did not ask the BZA to declare any ordinance *unconstitutional*. Such a declaration would not state a challenge to a zoning administrator's determination under the duly enacted FCZO. She does not ask the BZA to do anything more than interpret and apply its own zoning ordinance to the determinations of a local zoning official—precisely what the General Assembly envisioned and requires. Fairfax County designated a zoning administrator to administer, interpret, and enforce the FCZO. Code § 15.2-2286(A)(4) (localities may designate a zoning administrator with "all necessary authority on behalf of the governing body to administer and enforce the zoning ordinance"); FCZO § 18-103 (zoning administrator tasked with "administer[ing] and interpret[ing] the [FCZO]"). The BZA then must review the administrator's exercise of that authority and ensure that it complies with applicable law. *See* Code § 15.2-2309(1) (BZA has the "dut[y]" to "hear and decide appeals from any order, requirement, decision, or determination made by an administrative officer in the administration or enforcement of this article or of any ordinance adopted pursuant thereto"); FCZO § 18-103 (providing for "[a]n appeal of any decision of the Zoning Administrator . . . to the BZA").

The fact that an ordinance imports constitutional requirements, or otherwise protects constitutional interests, does not mean the BZA must—or may—ignore it. A statute or ordinance may elect to incorporate constitutional doctrine by reference. *See, e.g.*, *United States v. Kozminski*, 487 U.S. 931, 941 (1988) (interpreting statute criminalizing when "two or more persons conspire to injure . . . any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States," and finding "Congress intended the statute to incorporate by reference a large body of potentially evolving federal

- 8 -

law"); *Schleifer by Schleifer v. City of Charlottesville*, 159 F.3d 843, 853-54 (4th Cir. 1998) (rejecting vagueness challenge to Charlottesville juvenile curfew ordinance with exception for minors "exercising First Amendment rights protected by the United States Constitution" because incorporating the First Amendment by reference "provides adequate notice to citizens"). The County makes no argument for why the implication of constitutional interests renders an ordinance "inapplicable" as a matter of law. Because the ordinance is applicable, the BZA must consider it. Code § 15.2-2309(1) (the BZA is required to "consider any applicable ordinances, laws, and regulations in making its decision").[7]

While FCZO § 18-901(4) is unusual in that it appears no other locality in Virginia has implemented a similar requirement,[8] it is hardly rare for statutes and ordinances about zoning—which limits how individuals may use their privately owned property—to include constitutional protections.[9] The BZA has no inherent authority. It is a creature of legislative delegation and

---

[7] Indeed, it would be particularly ironic if a statute or ordinance striving to ensure constitutional compliance was exempted from application by the same efforts.

[8] Fairfax County amended FCZO § 18-901 in 2019 after the Zoning Administration Division Department of Planning and Zoning proposed additional language to

> expressly state that nothing in the Zoning Ordinance authorizes an unconstitutional inspection or search of property. In accordance with the Virginia and United States Constitutions, all searches and inspections require a warrant unless the property owner, tenant or other authorized party has consented to the search or inspection; another exception to the warrant requirement applies; or the search or inspection is conducted in accordance with a court order.

Zoning Admin. Div. Dep't of Plan. & Zoning, Staff Report at 3 (Apr. 9, 2019), https://www.fairfaxcounty.gov/planning-development/sites/planning-development/files/assets/documents/zoning%20ordinance/proposed%20amendments/editorial_and_minor_revisions.pdf.

[9] For example, there are numerous statutory requirements applicable to the BZA's appeal process that vindicate constitutional notice and due process concerns. The BZA must "fix a

must comply with procedural limitations placed on it by the legislature—including those that may vindicate constitutional interests. *See* 8 Patrick J. Rohan & Eric Damian Kelly, *Zoning and Land Use Controls* § 52.05[3] (1st ed. 2023) ("A court will overturn a zoning determination . . . where the lower tribunal has failed to follow procedures required by state statutes or its own prescribed procedures.").

In sum, a board of zoning appeals abuses its discretion if it "applie[s] erroneous principles of law." *Foster v. Geller*, 248 Va. 563, 566 (1994). Code § 15.2-2309(1) conferred upon the BZA not only the "power[]," but also the "dut[y]," to hear Leach-Lewis's challenge to a zoning official's decision to issue two notices of violation and consider "applicable" ordinances in doing so. *See also* Code § 15.2-2311 (providing for an appeal to the board of zoning appeals for any person "aggrieved" by "any decision" of a zoning official). In declining to follow the statutory requirements, the BZA committed a mistake of law and thereby abused its discretion. Whatever the merits of Leach-Lewis's allegations, they plainly fall within the statutory framework, and the BZA had a duty to review them on the merits. Code § 15.2-2309.

II. The proper remedy is to reverse and remand to the circuit court with instructions to remand to the BZA for further proceedings.

Having found that the BZA abused its discretion in failing to consider FCZO § 18-901(4), we also conclude that the circuit court erred in interpreting Code § 15.2-2309 to

---

reasonable time for the hearing." Code § 15.2-2312. And it must "give public notice thereof as well as due notice to the parties in interest." *Id.* There are rules about ex parte communication prior to the hearing and the disclosure of materials relating to an appeal, including a "staff recommendation or report furnished to a member of the board." Code § 15.2-2308.1(B). A zoning administrator must explain the basis for its decision at the hearing, and the appellant then bears the burden of proof to rebut the presumption of correctness. Code § 15.2-2309(1).

conclude that the BZA did not need to consider the ordinance.[10]  We reverse the circuit court's ruling below, with instructions to remand to the BZA for further proceedings consistent with this opinion.

The County asserts that under Code § 15.2-2314, the circuit court lacks the power to remand to the BZA because the statute does not include remand as a remedy, stating only that "[t]he court may reverse or affirm, wholly or partly, or may modify the decision brought up for review."

While remand is not specifically listed, "a statutory grant of appellate jurisdiction necessarily implies" a power to remand, "absent a specific mandate to the contrary."  *Jones v. Willard*, 224 Va. 602, 606-07 (1983) (remanding to the Virginia Employment Commission even though Code § 60.1-67.1 did not "expressly empower a reviewing court to remand" to the Commission).  This implied power of remand covers situations where it is necessary to correct a "defect in the record" or to permit "further evidence to be taken or additional findings to be made upon essential points."  *Id.* at 607; *see also Hoyle v. Va. Emp. Comm'n*, 24 Va. App. 533, 537-38 (1997) (affirming trial judge's jurisdiction to remand case for further proceedings).

Here, the record is insufficient for us, or the circuit court, to determine whether and how FCZO § 18-901(4) applies.  The staff report submitted to the BZA found that Leach-Lewis consented to the search of the two homes.  But Leach-Lewis argued that the zoning inspector told her he would search her residence regardless of whether she gave consent.

Furthermore, to the extent Enos did receive consent to conduct a follow-up inspection of 6211, the scope of that consent is unclear from this record, nor does the record reveal what parts

---

[10] Leach-Lewis, as an individual "aggrieved by any decision of the board of zoning appeals," was entitled by statute to appeal the BZA's decision to the circuit court.  Code § 15.2-2314.  A circuit court "hear[s] any arguments on questions of law de novo."  *Id.*

- 11 -

of the home he searched that day. *Barkley v. Commonwealth*, 39 Va. App. 682, 696 (2003) ("Officers who have obtained an individual's consent to search must not exceed the scope of their permission."). For example, Enos testified that he was requested to inspect the property at 6211 for something "to do with firearms" and he "took pictures just in case it was needed." The only pictures in the record on appeal, however, are time-stamped the day before the follow-up inspection took place. It is, therefore, impossible to conclude on this record whether the follow-up inspection permissibly encompassed, or even yielded, evidence relating to the zoning violations at issue. The BZA, for its part, expressly declined to adopt the staff report or make any factual findings on these issues.[11]

On appeal, the circuit court's task is not to make new findings of fact and law in the first instance, but to review the factual "findings and conclusions of the board" under a presumption of correctness. Code § 15.2-2314. While the County correctly points out that the same statute gives the circuit court authority to take additional evidence, this provision allows parties to introduce new evidence for a limited purpose—supporting or rebutting factual findings the BZA *has already made*, and that the circuit court must presume are correct. It does not authorize the circuit court to engage in a de novo fact-finding mission on issues the BZA expressly declined to resolve. Nor can we apply the "right result, wrong reason" doctrine and find that Leach-Lewis consented on this record. *See First Va. Bank v. Commonwealth*, 213 Va. 349, 351 (1972) ("Even where the Commission has reached the right result for the wrong reason, its decision, unlike that of a trial court, will not be permitted to stand."); *Banks v. Commonwealth*, 280 Va. 612, 617 (2010) (explaining that the record cannot "support[] an alternative ground for affirmance"

---

[11] The oral motion adopted by the BZA proposed adopting the "*rationale* of the staff report" (emphasis added), but expressly declined to reach Leach-Lewis's allegations of an unlawful search. We therefore find that the BZA did not adopt the factual findings of the staff report relating to the search.

permitting the right result for the wrong reason doctrine, if "evidence was conflicting" and the record does not "show how the circuit court resolved the dispute").

We therefore direct the circuit court to remand to the BZA to determine whether FCZO § 18-901(4) was violated as part of the BZA's review of the violation notices.[12]

CONCLUSION

Leach-Lewis argues the trial court erred "in ruling that the BZA was not required to address the appeal of the administrative officer's decision to issue the Notice of Violation in contradiction to Zoning Ordinance § 18-901(4) that requires adherence to Fourth Amendment constitutional requirements of a proper search." Because we agree, and remand for further proceedings consistent with this opinion, we do not reach Leach-Lewis's other assignments of error, including the determination that the properties were used as "offices" in violation of applicable zoning ordinances.

*Reversed and remanded with the instruction to remand to the Board of Zoning Appeals.*

---

[12] We decline to resolve the question, briefed by the parties, of whether FCZO § 18-901(4) incorporated the Fourth Amendment exclusionary remedy, and whether, or how, the exclusionary remedy would apply to an unlawful search in a civil proceeding like this one. Our Court will not "anticipate circumstances which may never materialize in order to decide a constitutional question." *Gayton Triangle Land Co. v. Bd. of Supervisors of Henrico Cnty.*, 216 Va. 764, 767 (1976) (declining to rule on constitutional challenge to a rezoning until appellant applies for variance which, if granted, would eliminate any prejudice resulting from the rezoning). Until it can be determined whether the County in fact conducted a search that violated FCZO § 18-901(4), it is unnecessary to decide whether the zoning administrator, or the BZA, were required to disregard evidence resulting from the search.