Present:  All the Justices

BOARD OF SUPERVISORS OF
FAIRFAX COUNTY, ET AL.

v.  Record No. 030039  OPINION BY JUSTICE CYNTHIA D. KINSER
                                        October 31, 2003
RICHARD M. ROBERTSON

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Arthur B. Vieregg, Judge


     The primary issue in this appeal concerns a challenge to the judgment of the circuit court holding that the denial of a landowner's application seeking a deviation from a setback requirement was arbitrary, capricious, and unreasonable.  Finding sufficient evidence of reasonableness to make the denial a fairly debatable issue, we will reverse the judgment of the circuit court.

MATERIAL PROCEEDINGS AND FACTS

     The appellee, Richard M. Robertson ("Robertson"), owns approximately 2.78 acres of real estate located on the west side of the Dulles Airport Access Road ("DAAR") and south of Idylwood Road in Fairfax County.  The property is zoned to the R-3 District, permitting the development of three residential dwelling units per acre.  Although the property's lengthy southeastern boundary abuts the DAAR, it is shielded from that roadway by an eight-foot, wooden acoustical fence.  Because of the property's configuration,

virtually all the parcel lies within 200 feet of the DAAR. Thus, a 200-foot setback restriction set forth in Fairfax County Zoning Ordinance ("Zoning Ordinance") § 2-414(1)(A) is applicable and affects the development of Robertson's property.

The provisions of Zoning Ordinance § 2-414(1)(A) require a minimum distance of 200 feet between all residential buildings and "right(s)-of-way of interstate highways and the Dulles Airport Access Road." Pursuant to subsection (3) of that ordinance, "[d]eviations" from the setback requirement "may be permitted with Board of Supervisors' approval of appropriate proffered conditions, if it finds that such deviations will further the intent of the Ordinance, adopted comprehensive plan and other adopted policies." However, the setback requirement "shall not apply in those instances where a lot has been recorded prior to the effective date of this Ordinance where the enforcement of this regulation would negate the use of the lot in accordance with the provisions of the zoning district in which located." Zoning Ordinance § 2-414(4). Since Robertson's property satisfied the conditions in subsection (4), the parties stipulated that he could develop one single-family dwelling on the property.

Robertson, however, wanted to build four single-family dwelling units on his property. Thus, in accordance with the provisions of Zoning Ordinance § 2-414(3), Robertson filed a proffered condition amendment application seeking a deviation from the 200-foot setback requirement. The proffers submitted with Robertson's application included, among other things, the use of certain materials and building techniques that would reduce the interior noise level in the four dwellings that he proposed to construct on the subject property.

After several hearings before the Fairfax County Planning Commission ("the Commission"), the Commission denied Robertson's application.[1] One of the commissioners voiced concerns about noise levels in the yards of the homes that would be constructed if the deviation was approved and about traffic data showing an increasing number of vehicles using the DAAR each day. The commissioner also stated that Robertson's right to build one home on the property was a reasonable use of his

---

[1] The Fairfax County Department of Planning and Zoning had recommended that the Commission approve Robertson's application but only after considerable discussion by the staff about the fact that a 1997 noise study submitted by Robertson did not address future noise levels on the property. The staff was also concerned about the character and age of the wooden acoustical wall that separated the property from the DAAR.

property and that granting his requested deviation would not enhance the ordinance at issue or the Comprehensive Plan for Fairfax County, Virginia ("Comprehensive Plan"). The Board of Supervisors of Fairfax County ("the Board") subsequently heard Robertson's application and also denied it, adopting the comments at the Commission's hearing.

Robertson then filed a second amended bill of complaint against the Board and Fairfax County (collectively, "the defendants"), seeking a declaratory judgment and injunctive relief. In that pleading, Robertson acknowledged that, because most of his property lies within 200 feet of the DAAR, the terms of Zoning Ordinance §§ 2-414(1)(A) and -414(4) limit the development of the property to one dwelling unit. Among other things, Robertson alleged that the Board's denial of his application was arbitrary, capricious, and unreasonable, and bore no substantial relation to public health, safety, and welfare.

The circuit court sustained a plea in bar and demurrer filed by the defendants in response to the second amended bill of complaint. After that ruling, the only claims remaining in the case were

> that the action of the Board in denying
> [Robertson's] application was arbitrary,
> capricious and unreasonable and an abuse of

4

discretion; and/or failed to advance a legitimate public purpose and bore no relationship to the public health, safety and welfare; and/or failed to have a rational nexus to any legitimate state interest or public purpose.

After hearing evidence relevant to those claims, the circuit court issued an interim letter opinion.  The court ruled, sua sponte, that the provisions of Zoning Ordinance § 2-414(4) do not apply to the subject property and that Robertson, therefore, cannot develop even one dwelling on his property due to the 200-foot setback requirement unless the Board approves a deviation from that requirement.  The court believed that the express terms of subsection (4) limit its application to a "lot."  That term is defined as "a parcel of land that is designated at the time of application for a special permit, a special exception, a Building Permit, or Residential/Non-Residential Use Permit, as a tract all of which is to be used, developed or built upon as a unit under single ownership."  Zoning Ordinance § 20-300.  The court reasoned that, since Robertson's property was not the subject of an application for one of the permits listed in that definition, it was not a "lot" as that term is defined in Zoning Ordinance § 20-300 and

therefore did not come within the purview of Zoning Ordinance § 2-414(4).[2]

After the circuit court made that ruling, the defendants asked the court to reconsider. In support of their motion, the defendants presented testimony from Jane W. Gwinn ("Gwinn"), Zoning Administrator for Fairfax County, about her interpretation of Zoning Ordinance § 2-414(4). Gwinn testified that she had consistently construed the provisions of that subsection to mean that, if a lot was recorded prior to August 14, 1978, the effective date of Zoning Ordinance § 2-414, and if application of the 200-foot setback requirement would negate all use of the lot, the lot was "grandfathered" and the landowner could construct one dwelling on the lot without complying with the 200-foot setback requirement. Since Robertson's property satisfied those conditions, Gwinn indicated that Robertson would have a right to a building permit allowing construction of one single-family dwelling. Gwinn noted, however, that, when a landowner, such as Robertson, wishes to further subdivide a lot, the additional lots would not be recorded prior to the

---

[2] The court further ruled that the defendants' proffered evidence showing the development of one single-family dwelling as a reasonable use of Robertson's property was irrelevant.

6

effective date of Zoning Ordinance § 2-414 and the setback requirement would, therefore, be applicable. In that situation, the landowner would need to obtain the Board's approval of a proffered condition amendment and deviation under subsection (3) or apply to the board of zoning appeals for a variance.

Gwinn also explained how she applied the definition of the term "lot" in the context of Zoning Ordinance § 2-414(4). She testified that, when determining the applicability of subsection (4) to a particular parcel of real estate, the determination is made on the basis that the landowner will be applying for a building permit. In Gwinn's view, that approach brings the parcel within the meaning of the term "lot."

After hearing this testimony, the circuit court denied the defendants' motion to reconsider. The court's decision on this particular issue led it to evaluate the propriety of the Board's denial of Robertson's application from the perspective that the provisions of Zoning Ordinance § 2-414(1)(A) prevented any development of the subject property and that Robertson sought a deviation that would allow him to build four single-family residences on the property. That level of development would result in a density lower

than what would have been permissible under the R-3 zoning classification absent the 200-foot setback requirement.

The circuit court subsequently issued a letter opinion, in which it initially reiterated its prior ruling regarding the applicability of Zoning Ordinance § 2-414(4).[3] The court then held that Robertson had met his "twin burden of proving his proffered use of the property was reasonable and the Board's rejection of his application was unreasonable." Next, the court considered whether the defendants had produced evidence to establish that the Board's rejection of Robertson's application was fairly debatable. The court concluded that the defendants had failed to do so. In the court's view, the defendants had "not provided probative evidence demonstrating that DAAR noise levels at the [p]roperty [were] presently problematic," or that "noise levels will be problematic in the future." Thus, the court held that the Board's denial of Robertson's application was arbitrary, capricious, and unreasonable. In a final decree incorporating its letter

---

[3] The court actually issued two letter opinions. It withdrew the first one after the Board objected, in part, on the basis that the court was mistaken about the location of the property. The court initially believed that Robertson's property is located outside a road known as the Washington Beltway when, in fact, it is located inside that road.

opinion, the circuit court remanded Robertson's application to the Board for further action consistent with the court's letter opinion.  The defendants appeal from that judgment.

ANALYSIS

I. Standard of Review

"When a governing body of any locality reserves unto itself the right to issue special exceptions, the grant or denial of such exceptions is a legislative function." Board of Supervisors v. McDonald's Corp., 261 Va. 583, 589, 544 S.E.2d 334, 338 (2001) (citing Cole v. City Council of Waynesboro, 218 Va. 827, 837, 241 S.E.2d 765, 771 (1978)). In this case, the Board's authority to grant "[d]eviations" from the setback requirement of Zoning Ordinance § 2-414(1)(A) is a legislative function.  As such, a presumption of legislative validity attached to the Board's denial of Robertson's application.  Id.; County of Lancaster v. Cowardin, 239 Va. 522, 525, 391 S.E.2d 267, 269 (1990); City of Richmond v. Randall, 215 Va. 506, 511, 211 S.E.2d 56, 60 (1975).

This presumption of validity remains with the legislative action as we review the decision of the circuit court in accordance with the following principles:

> [W]e accord the court's finding, as with the usual case, a presumption of correctness, but we also give full credit to the presumption of validity of the

9

> legislative action involved in the denial and then, assimilating the two presumptions, we examine the record to determine whether the evidence sustains the court's finding. In other words, the presumption of validity of legislative action does not disappear when a trial court finds that the action is unreasonable; the presumption accompanies the legislative action when the latter is brought to this [C]ourt for review, and it is viable until this [C]ourt holds with the trial court that the legislative action is unreasonable.

Board of Supervisors v. Lerner, 221 Va. 30, 34-35, 267 S.E.2d 100, 103 (1980) (internal citation omitted); accord McDonald's, 261 Va. at 589, 544 S.E.2d at 338.

## II. Presumption of Reasonableness

The presumption of legislative validity that attached to the Board's denial of Robertson's application is a presumption of reasonableness. McDonald's, 261 Va. at 590, 544 S.E.2d at 338; Board of Supervisors v. Snell Constr. Corp., 214 Va. 655, 659, 202 S.E.2d 889, 893 (1974). "Legislative action is reasonable if the matter in issue is fairly debatable." Lerner, 221 Va. at 34, 267 S.E.2d at 102 (citing County of Fairfax v. Parker, 186 Va. 675, 680, 44 S.E.2d 9, 12 (1947)). An issue is "fairly debatable when the evidence offered in support of the opposing views would lead objective and reasonable persons to reach different conclusions." Board of Supervisors v. Williams, 216 Va. 49, 58, 216 S.E.2d 33, 40 (1975); accord Board of Supervisors v. Stickley, 263 Va. 1, 7, 556 S.E.2d 748, 751

10

(2002); McDonald's, 261 Va. at 590, 544 S.E.2d at 339; Lerner, 221 Va. at 34, 267 S.E.2d at 102. The evidence must meet both quantitative and qualitative tests. Williams, 216 Va. at 58, 216 S.E.2d at 40.

We have enunciated the following principles for determining whether the presumption of reasonableness in a given case should prevail or has been overcome:

> Where presumptive reasonableness is challenged by probative evidence of unreasonableness, the challenge must be met by some evidence of reasonableness. If evidence of reasonableness is sufficient to make the question fairly debatable, the [legislative action] 'must be sustained'. If not, the evidence of unreasonableness defeats the presumption of reasonableness and the [legislative action] cannot be sustained.

Snell Constr. Corp., 214 Va. at 659, 202 S.E.2d at 893; accord Stickley, 263 Va. at 7, 556 S.E.2d at 751; County Bd. of Arlington County v. Bratic, 237 Va. 221, 227, 377 S.E.2d 368, 371 (1989); Williams, 216 Va. at 58-59, 216 S.E.2d at 40.

### III. Discussion

The defendants assigned error to the circuit court's finding that the Board's denial of Robertson's application was arbitrary, capricious, and unreasonable. To decide this issue, we will use the analytical framework utilized by this Court in Cowardin and Bratic. We do so because the requested deviation did not involve a challenge to the

11

reasonableness of the current zoning classification assigned to Robertson's property.  Thus, the application for a deviation in this case is analogous to the application for a conditional use permit in Cowardin, 239 Va. at 523, 391 S.E.2d at 268, and the application for a use permit in Bratic, 237 Va. at 222, 377 S.E.2d at 368. Accordingly, we will assume, as we did in both of those cases, that Robertson's request to deviate from the 200 foot setback requirement by building, with proffered conditions, four dwelling units is an appropriate use of his property and that the denial of his application is probative evidence of unreasonableness.  See Cowardin, 239 Va. at 526, 391 S.E.2d at 269; Bratic, 237 Va. at 228, 277 S.E.2d at 371.  Thus, the dispositive inquiry is whether the defendants produced sufficient evidence of reasonableness to make the Board's rejection of Robertson's request for a deviation fairly debatable.[4]  Id.; Cowardin, 239 Va. at 526, 391 S.E.2d at 269.

---

[4] It is important to note that this case did not involve an application for rezoning.  Robertson acknowledged this fact at one of the Commission's hearings and on brief.  Additionally, a senior staff coordinator in Fairfax County's Department of Planning and Zoning, Peter H. Braham, testified that Robertson's application did not request a change in zoning or an increase beyond the density allowed in the R-3 zoning classification.  Thus, Robertson did not have to produce evidence showing that the use of his property for one single-family dwelling was

Resolution of the dispositive question turns on the evidence concerning future noise levels on the subject property.  The defendants and Robertson presented testimony about the noise levels from experts in the field of acoustical engineering.  Kevin Miller testified on behalf of Robertson and based his conclusions on a noise study performed on the property in 1997.  Gary E. Ehrlich performed an acoustical analysis of Robertson's property in 2002 for the defendants and testified on their behalf.

Miller stated that the exterior noise levels on the subject property when the 1997 study was conducted were below Fairfax County's exterior noise criterion of 65 dBA Ldn at any ground level.[5]  Although Ehrlich used a different

---

unreasonable.  Contra City Council of Virginia Beach v. Harrell, 236 Va. 99, 102, 372 S.E.2d 139, 141 (1988). "When a landowner has been denied rezoning and he challenges the denial, his threshold burden of proof requires a clear demonstration that 'the existing zoning classification is no longer reasonable or appropriate.' " Board of Supervisors v. International Funeral Serv., Inc., 221 Va. 840, 843, 275 S.E.2d 586, 588 (1981) (emphasis added) (citing Vienna Council v. Kohler, 218 Va. 966, 976, 244 S.E.2d 542, 548 (1978)).

[5] The term "dBa Ldn" refers to the day-night average sound level measured in decibels for a 24-hour period.  Ten decibels are added to readings made during the period from 10 p.m. until 7 a.m. because humans are more sensitive to noise at nighttime.
The Comprehensive Plan states that "[n]ew development should not expose people in their homes, or other noise sensitive environments to noise in excess of 45 dBA Ldn, or to noise in excess of 65 dBA Ldn in the outdoor recreation

method to measure the noise levels on Robertson's property than the one utilized in the 1997 study, he agreed that there was no appreciable difference between his 2002 noise level measurements and the 1997 measurements. However, Ehrlich obtained traffic projections from Fairfax County and, using those projections in conjunction with his noise level measurements, he analyzed future noise levels on Robertson's property. Ehrlich opined that, in some locations on the property, future noise levels will exceed 65 dBA Ldn as early as 2010.

Although Miller confirmed that he often examines future traffic projections and the effect of that traffic on future noise levels on a given parcel of real estate, he admitted that the 1997 study did not address future noise levels on Robertson's property and was actually a "snapshot in time as of May of 1997." However, Braham, the senior staff coordinator in the department of planning and zoning, indicated that there is a "submission" requirement stating that an application for a deviation from the 200-foot setback provision should include a study addressing "projected noise levels or projected traffic." Braham also

areas of homes." The Comprehensive Plan further provides that, in order "[to] achieve these standards[,] new residential development in areas impacted by highway noise between 65 and 75 dBA Ldn will require mitigation."

14

testified that future noise levels in Fairfax County is a concern.

Despite the fact that Robertson offered no evidence regarding future noise levels on his property and that the only evidence on this question showed that future noise levels would exceed the 65 dBA Ldn guideline, the circuit court concluded that the defendants failed to produce sufficient probative evidence of reasonableness to make the Board's denial of Robertson's application a fairly debatable issue. The court reached this conclusion by rejecting Ehrlich's testimony because of the methodology Ehrlich used to measure the noise levels on the property,[6] and because Ehrlich relied on, what the court viewed as, the "fatally flawed projections of future traffic increases" on the DAAR prepared by Robert O. Owolabi, Chief

---

[6] The circuit court questioned Ehrlich's methodology because he did not measure the noise on the property for a continuous 24-hour period but instead measured external noise at 5-minute intervals and then averaged the readings. In the court's opinion, the Comprehensive Plan required one Ldn figure. And, Miller testified that acoustical engineering practice required continuous, 24-hour monitoring. For these reasons, the court concluded that "Ehrlich's methodology was flawed." Assuming the court was correct that the Comprehensive Plan required one Ldn figure and continuous 24-hour monitoring, the Board had the discretion to decide whether to adhere to the guidelines in the Comprehensive Plan or to follow some other reasonable approach in making its decision on Robertson's application. See, Lerner, 221 Va. at 37, 267 S.E.2d at 104.

of Technical Analysis and Research of the Fairfax County Department of Transportation.[7]  Disagreeing with the Board, the court stated that it was not bound to accept the testimony of Ehrlich and Owolabi because, according to the court, their testimony had been challenged on cross-examination.

Relying on this Court's decision in Stickley, the defendants argue on appeal that the circuit court failed "to appreciate the significant difference between a case challenging a legislative decision, and an ore tenus bench trial not involving a legislative decision."  The defendants also claim that the evidence regarding future noise levels on the property and whether they would exceed the Comprehensive Plan guideline of 65 dBA Ldn was sufficient to make the Board's denial of Robertson's application fairly debatable.  We agree with the defendants' position.

In Stickley, the landowner argued "that, because the trial court heard the evidence ore tenus, 'its factual findings carry the same weight as [a] jury's verdict.' "

---

[7] Owolabi, testifying as an expert in traffic forecasting and traffic calculations, stated that traffic levels adjacent to the property would increase from an "Average Daily Traffic" ("ADT") of 75,000 vehicles in 2000 to an ADT of 86,945 vehicles in 2005, 100,790 vehicles in 2010, and 111,445 vehicles in 2020.

263 Va. at 6, 556 S.E.2d at 751.  We rejected that argument because the case involved legislative action by a board of supervisors.  Id.  "In such a case, while we accord the trial court's finding the usual presumption of correctness, we also accord the legislative action a presumption of validity."  Id.

The factual issue in Stickley was whether a special use permit allowing the landowner to raise and release game birds on his farm would create an increased risk that certain diseases harmful to poultry would spread between commercial poultry flocks in the county where the landowner resided.  Id. at 5-6, 556 S.E.2d at 750-51.  With regard to that issue, the evidence was "a battle of the experts," the landowner having presented testimony from four experts and the governing body having elicited testimony from one expert.  Id. at 7-8, 556 S.E.2d at 752.  The relevant question, however, was "not who presented the greatest number of expert witnesses or even who won the battle of the experts," but rather "whether there [was] any evidence in the record sufficiently probative to make a fairly debatable issue of the . . . decision to deny [the landowner] a special use permit."  Id. at 11, 556 S.E.2d at 754.  We concluded that the testimony of the governing

17

body's expert about the " 'significant risk' to poultry from the release of pen-raised game birds" was sufficient to make the issue fairly debatable.  Id.

The same rationale applies in this case.  Probative evidence demonstrated that future noise levels on Robertson's property will likely exceed the Comprehensive Plan guideline.  We further note that one of the concerns initially voiced at the Commission's hearing dealt with future noise levels and whether they would exceed 65 dBA Ldn.  Yet, the 1997 study submitted by Robertson did not address future noise levels on his property.  And, his proffers dealt only with building techniques and materials needed to achieve the guideline of 45 dBA Ldn for interior noise levels in the proposed dwellings.  None of the proffers included measures designed to reduce exterior noise even though the 1997 study stated that the 8-foot high wooden acoustical fence running along the DAAR provided only 3 dBA attenuation of the DAAR traffic noise at ground level on the property.

As we said in Stickley, the question is not "who won the battle of the experts."  263 Va. at 11, 556 S.E.2d at 754.  The relevant inquiry is "whether there [was] any evidence in the record sufficiently probative to make a fairly debatable issue of the . . . decision to deny"

18

Robertson's application for a deviation from the setback requirement.  Id. (emphasis added).  Having examined the record, we find sufficient evidence of reasonableness to make the Board's rejection of Robertson's request for a deviation a fairly debatable issue, i.e. the evidence "would lead objective and reasonable persons to reach different conclusions."  Williams, 216 Va. at 58, 216 S.E.2d at 40.  Thus, we hold that the circuit court erred in finding that the Board's denial was arbitrary, capricious, and unreasonable.

We turn now to the defendants' two remaining assignments of error.  First, the defendants assert that the circuit court erred in ruling that Zoning Ordinance § 2-414(4) did not apply to Robertson's property and that the 200-foot setback requirement prevented any development on the property unless the Board approved a deviation.  In the final assignment of error, the defendants contend that the circuit court erred in ruling, sua sponte, that the Board's denial of Robertson's application constituted piecemeal downzoning.

With regard to the first issue, the defendants argue that Robertson never disputed that the provisions of Zoning Ordinance § 2-414(4) apply to his property and, pursuant to that subsection, he can construct one single-family

dwelling on the property.  We agree.  In fact, Robertson affirmatively pled in the second amended bill of complaint that "the literal terms of Section 2-414 would limit the property to the development of one dwelling unit."  Moreover, Robertson entered into a stipulation stating that "[t]he parties agree that Richard M. Robertson is permitted to build one single-family home on the subject property by right."

Since Robertson never alleged that the Board had misconstrued either Zoning Ordinance § 2-414(4) or the term "lot," the circuit court erred in deciding issues never pleaded or claimed by Robertson.  "It is firmly established that no court can base its judgment or decree upon facts not alleged or upon a right which has not been pleaded and claimed."  Ted Lansing Supply Co. v. Royal Aluminum & Constr. Corp., 221 Va. 1139, 1141, 277 S.E.2d 228, 229 (1981) (citing Potts v. Mathieson Alkali Works, 165 Va. 196, 207, 181 S.E. 521, 525 (1935)); accord, Jenkins v. Bay House Assoc., 266 Va. 39, 43, 581 S.E.2d 510, 512 (2003).  "A litigant's pleadings are as essential as his proof, and a court may not award particular relief unless it is substantially in accord with the case asserted in those pleadings."  Id.

Furthermore, we are persuaded by the interpretation given to the provisions of Zoning Ordinance § 2-414(4) and the definition of the term "lot" by the Board and Gwinn. Their consistent interpretation of these provisions is entitled to great weight. See Masterson v. Board of Zoning Appeals, 233 Va. 37, 44, 353 S.E.2d 727, 733 (1987) ("consistent administrative construction of an ordinance by the officials charged with its enforcement is entitled to great weight"); Rountree Corp. v. City of Richmond, 188 Va. 701, 712, 51 S.E.2d 256, 261 (1949) ("construction long placed upon statutes without protest from officials charged with their enforcement is entitled to great weight").

With regard to the final assignment of error, we hold, that, like the preceding issue, Robertson did not claim or plead that the Board's denial constituted piecemeal downzoning. Although the circuit court stated that it was not addressing that issue, the court nevertheless concluded that the Board's application of Zoning Ordinance § 2-414 was "in-fact impermissible piecemeal downzoning." Thus, to the extent the circuit court decided this issue, it was error to do so since Robertson did not assert such a claim. See Jenkins, 266 Va. at 43, 581 S.E.2d at 512.

CONCLUSION

For these reasons, we conclude that the Board's denial of Robertson's proffered condition amendment application seeking a deviation from the 200-foot setback requirement was not arbitrary, capricious, and unreasonable.  The defendants presented sufficient evidence of reasonableness to make the Board's denial of Robertson's application a fairly debatable issue.  The circuit court erred in finding otherwise.  The circuit court also erred in deciding two issues never pleaded or claimed by Robertson.  Accordingly, we will reverse the judgment of the circuit court and enter judgment in favor of the defendants.

<u>Reversed and final judgment</u>.