COURT OF APPEALS OF VIRGINIA

Present: Judges Chaney, White and Senior Judge Annunziata
Argued at Fairfax, Virginia

UNPUBLISHED

CHRISTINA BOYER

v.      Record No. 0846-23-4

MEMORANDUM OPINION[*] BY
JUDGE KIMBERLEY SLAYTON WHITE
JUNE 4, 2024

FREDERICK COUNTY BOARD OF SUPERVISORS

FROM THE CIRCUIT COURT OF FREDERICK COUNTY
William W. Eldridge, IV, Judge

Richard S. Toikka (Wilt Toikka Kraft, LLP, on briefs), for appellant.

Jim H. Guynn, Jr. (Roderick B. Williams, County Attorney; Guynn
Waddell, P.C., on brief), for appellee.

The Frederick County Board of Supervisors denied Christina Boyer's application for a

conditional use permit to provide dog kennel boarding and training services within her home.

Boyer appealed under Code § 15.2-2285(F) and asked the circuit court for a declaratory judgment

that she was entitled to the conditional use permit. The circuit court sustained the Board's demurrer

without leave to amend and dismissed Boyer's appeal with prejudice. Boyer argues that the circuit

court applied "incorrect standards" when ruling on the demurrer, misconstrued her arguments, and

should have granted her leave to amend. For the reasons stated below, we affirm the circuit court's

judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

Boyer sought to provide dog kennel boarding and training services within her home and pursued a conditional use permit (CUP) for such purposes. A dog kennel may be operated within a rural area district "only if a conditional use permit has been granted." County Code § 165-401.03(F). "The purpose" of rural area district zoning "is to preserve large, open parcels of land, tree cover, scenic views, sensitive environmental areas and prime agricultural and locally significant soils." County Code § 165-401.01(A). In considering whether to grant a CUP, the Board must protect "the health, safety and welfare of the residents" and avoid "adverse impacts on surrounding properties." County Code § 165-103.01(A).

The Frederick County Planning Commission recommended approval as the CUP application complied with standards in the Frederick County Code of Ordinances § 165-103.02. The Planning Commission staff recommended that any CUP include conditions limiting the number of dogs Boyer could simultaneously house, requiring all dogs to be indoors by 9:00 p.m., and prohibiting Boyer from hiring employees. After two public hearings, the Planning Commission passed a resolution recommending approval of the CUP with eight conditions, and the application was sent to the Board for consideration.

Several weeks before the Board's public hearing, Supervisor Graber, Planning Commission staff, and other supervisors tried to arrange an inspection of Boyer's house. Believing that Graber had a "conflict of interest" because he owned a "neighboring property," Boyer was reluctant to allow the inspection. After Graber and Boyer exchanged multiple emails about her application, Boyer served him with a no trespassing notice through the sheriff. In addition, Boyer wanted all the supervisors to inspect her property together despite being advised that under the Virginia Freedom of Information Act, no more than two supervisors could conduct

"county business" together without requiring public advertising.  As a result of the conditions set by Boyer, no supervisor inspected her house.

Several neighbors submitted written comments opposing the application.  Two of Boyer's neighbors were concerned that a kennel would damage property values "and the existing quiet, peaceful community."  They specifically were concerned about "sound pollution from the kennel" and "additional traffic" along the dirt road on which Boyer and her neighbors lived.  Another neighbor was concerned that a dog kennel would disturb the community's "peace and quiet," especially if the dogs barked "during the night."  A third neighbor opposed Boyer's application because she did not believe that Boyer properly cared for her own dogs.  She raised the dogs' living arrangements and stench, which could be detected from "across the street."  In addition, she stated that numerous people had mistakenly entered her property seeking to buy puppies from Boyer.

Boyer spoke at the public hearing in support of her application.  She highlighted how the conditions limiting the number of dogs and the hours they could be outside mitigated the concerns her neighbors had raised.  She also pointed out the neighbors who had signed a petition supporting her application.

Supervisor Graber and Boyer then discussed a series of events and interactions between them, some of which were unrelated to Boyer's application.  Graber insisted that he had no conflict of interest and had been "nothing but kind" to Boyer since she moved into the neighborhood.  He maintained that Boyer's allegations of a conflict were "most inappropriate" and a "blatant lie."  Boyer responded that she would not allow Graber onto her property because she did not "trust" him because of past interactions between him and her family.

After the public comments ended, the Board denied Boyer's application by a four to two vote. One supervisor voted to deny the application "only because" no "good" could result between Graber and Boyer.

Boyer appealed under Code § 15.2-2285(F) and asked the circuit court for a declaratory judgment that she was entitled to the CUP and injunctive relief to order the Board to grant her CUP application. She alleged that the Board's decision was "not fairly debatable" and that the Board had acted "capriciously, arbitrarily and not in accordance with law." Boyer also alleged that Graber was "biased" because he was "a neighbor," "strongly opposed" the application, and "demonstrated his animosity" toward her. Boyer argued that Graber had "tainted" the entire Board and even his recusal would not "cure the taint." She asked the circuit court to "consider the evidence anew" and issue a declaratory judgment under Code § 8.01-184 that she was entitled to a CUP. The Board filed a motion craving oyer to make the record of the proceedings before the Board a part of the record. The circuit court granted the unopposed motion and set up a briefing schedule. The court also granted Boyer leave to file an amended complaint. In the amended pleading, Boyer alleged that, despite a petition supporting her application from 14 neighbors, Supervisor Graber made strong and public statements on Boyer's CUP application that made Supervisor Graber's participation in the Board proceedings inappropriate as an interested party.[1] Boyer also argued that the Board was acting in a quasi-judicial capacity even though the Fredrick County Code identifies the Board as having a legislative function when reviewing requests for CUPs.

The Board demurred, arguing that the complaint failed to state any facts supporting Boyer's allegation that the Board's action was arbitrary, capricious, and not fairly debatable. The Board

---

[1] Boyer alleged that Supervisor Wells denied the application because he did not "see any good coming of this between" Boyer and Supervisor Graber.

further insisted that Boyer's allegation that a supervisor was "biased" does not "state a cause of action" and that the circuit court lacked jurisdiction to adjudicate Boyer's request for a declaratory judgment.

At the hearing on the demurrer, the circuit court asked Boyer whether she was pursuing a "straight appeal" from the Board's action under Code § 15.2-2285 or was attempting to "attach[] other claims to that appeal" by seeking a declaratory judgment. Boyer stated that she was not pursuing "other claims" and that a declaratory judgment action was "a common way to bring [an] appeal" under Code § 15.2-2285(F) to a circuit court because, in her view, Code § 15.2-2285(F) "is silent" regarding "how" to appeal. Boyer then conceded that she was not asking the circuit court to adjudicate an independent declaratory judgment action; rather, her petition was "just an appeal" under Code § 15.2-2285(F). Accordingly, the circuit court noted, without objection, that Boyer had stipulated that this was "an appeal under [Code §] 15.2-2285."

Boyer argued that the circuit court should overrule the Board's demurrer because the "true nature" of her claim was apparent on the face of her complaint. She asserted that Supervisor Graber should not "have been allowed to" consider her application and that it was apparent that his animus towards her influenced the Board's decision. Analogizing to cases requiring recusal of judges, Boyer argued that Graber should have been recused because he was acting in a "quasi-judicial capacity." Accordingly, Boyer maintained that she had been "deprived of a fair hearing" because of Graber's bias. Boyer concluded that the circuit court should not even consider whether the Board's judgment was "fairly debatable" because Graber's bias, standing alone, justified returning the matter to the Board for further proceedings without Graber, or holding a de novo hearing in the circuit court on whether the CUP should be granted.

After finding that the Board was acting in a legislative, not judicial, capacity when deciding whether to grant Boyer's application under County Code § 165-103.01, the circuit court ruled that

under *Blankenship v. City of Richmond*, 188 Va. 97 (1948), even if Graber was biased or offended others in the "performance of a purely legislative duty," he was "answerable" only to voters "and not to the courts which have no power to inquire into the motives which prompted his action on a purely legislative matter." *Id.* at 103. Thus, the court concluded that Boyer's request for a "new trial due to some alleged conflict by Supervisor Graber fails."

Although the circuit court determined that it could sustain the Board's demurrer on the above basis "alone," it nevertheless also found that the demurrer should be sustained because Boyer had failed to allege sufficiently that the Board's action was arbitrary, capricious, or not fairly debatable. After reviewing the entire legislative record, including the video of the public hearing and the public comments supporting and opposing the application, the court found that the Board's action was "fairly debatable."

Finally, to the extent Boyer alleged that the Board had "impermissibly discriminat[ed]" against her, the circuit court found that her complaint failed because it did not allege that "the requested use" was "granted to one landowner" who was similarly situated but rejected as to her. Following the court's ruling, Boyer moved for leave to amend her complaint "to add a count of discrimination." The court denied the motion, finding amendment would be futile.

On appeal, Boyer argues that the circuit court erred by ruling that her "appeal could not be brought through an action for declaratory judgment." She also contends that the court did not apply the correct standards when ruling on the demurrer, which required it to view the evidence and pleadings in the light most favorable to her. Next, she asserts that court misconstrued her complaint as alleging only that she was deprived of a fair hearing because of Graber's conflict, when she alternatively pleaded that the Board's decision was arbitrary and capricious. Finally, she maintains that the circuit court erred by denying her motion for leave to amend.

- 6 -

ANALYSIS

## I. The "Fairly Debatable" Standard on Demurrer

A locality's decision to grant or deny a CUP "is presumed valid and will not be altered by a court absent 'clear proof that the action is unreasonable, arbitrary, and bears no reasonable relation to the public health, safety, morals, or general welfare.'" *EMAC, LLC v. County of Hanover*, 291 Va. 13, 21 (2016) (quoting *City Council of Virginia Beach v. Harrell*, 236 Va. 99, 101-02 (1988)). "If a challenging party presents probative evidence of unreasonableness, the locality must present sufficient evidence to show that the reasonableness of the decision is 'fairly debatable' in order to have the locality's decision upheld in court." *Id.* at 22 (citing *Harrell*, 236 Va. at 102). An issue is "fairly debatable when the evidence offered in support of the opposing views would lead objective and reasonable persons to reach different conclusions." *Id.* (quoting *Bd. of Supervisors of Fairfax Cnty. v. McDonald's Corp.*, 261 Va. 583, 590 (2001)). "The relevant question" is "'not who presented the greatest number of expert witnesses or even who won the battle of the experts,' but rather 'whether there [was] any evidence in the record sufficiently probative to make a fairly debatable issue of the . . . decision to deny [the landowner] a special use permit.'" *Bd. of Supervisors of Fairfax Cnty. v. Robertson*, 266 Va. 525, 536 (2003) (alterations in original) (quoting *Bd. of Supervisors of Rockingham Cnty. v. Stickley*, 263 Va. 1, 11 (2002)).

Boyer argues that the circuit court could not consider whether the Board's action was "fairly debatable" when ruling on a demurrer as a matter of law. She summarily asserts that she alleged facts that, if true, would demonstrate that the Board's action was "unreasonable." Thus, she concludes that she was "entitled" to a trial on whether the Board's action was "fairly debatable." We disagree.

When the parties in an appeal under Code § 15.2-2285(F) enter a consent order granting oyer to include the legislative record as part of the record before a circuit court, the court may properly consider those documents along with the allegations in the amended complaint when ruling on a demurrer. *EMAC*, 291 Va. at 21. The Supreme Court has also confirmed that in such cases a circuit court may sustain a demurrer on the ground that the amended complaint and documents attached via oyer failed to allege facts demonstrating that the county's action was not fairly debatable, when viewed in the light most favorable to the plaintiff. *Id.* at 23-25.

Here, the parties entered a consent order granting oyer to include the legislative record, and the circuit court properly considered that record alongside the complaint's allegations when ruling on the Board's demurrer. The consent order produced significant oral, written, and video evidence from Boyer and adjacent landowners for the circuit court to consider.[2] Since testimony included support and disapproval of the CUP, "there [was] . . . evidence in the record sufficiently probative to make a fairly debatable issue of the . . . decision to deny" Boyer's CUP. *See Robertson*, 266 Va. at 536 (2003) (first and third alterations in original). We agree with the circuit court that the documents from the motion craving oyer "demonstrate that there is sufficient evidence to show the reasonableness of the board's decision was fairly debatable." Thus, Boyer has failed to demonstrate that the circuit court could not, as a matter of law, consider whether the Board's decision was "fairly debatable" when ruling on the demurrer.

---

[2] Several neighbors submitted written comments opposing the application because the neighbors were concerned about damage to property values, sound pollution from the kennel, and additional traffic on the road that Boyer and her neighbors shared. Video evidence included Boyer's testimony about her plans for the kennel and the petition signed by numerous neighbors supporting her application as well as a video tour of Boyer's property. The video evidence also showed commentary between Supervisor Graber and Boyer on their neighborly relationship. The oral evidence included voicemails from Supervisor Graber and Mark Cheran, Zoning and Subdivision Administrator.

This Court cannot review the merits of Boyer's assignment of error because Boyer does not identify any of the allegations that, if true, would constitute probative evidence of an unreasonable decision by the Board. "Unsupported assertions of error 'do not merit appellate consideration.'" *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008)). "Nor is it this Court's 'function to comb through the record . . . in order to ferret-out for ourselves the validity of [appellant's] claims.'" *Burke v. Catawba Hosp.*, 59 Va. App. 828, 838 (2012) (alterations in original) (quoting *Fitzgerald v. Bass*, 6 Va. App. 38, 56 n.7 (1988) (en banc)). To the contrary, if an appellant believes "that the trial court erred, Rule 5A:20(e) require[s] him 'to present that error to us with legal authority to support [his] contention.'" *Bartley*, 67 Va. App. at 746 (second alteration in original) (quoting *Fadness v. Fadness*, 52 Va. App. 833, 851 (2008)).

Boyer's summary and superficial argument leaves this Court without a legal prism through which to view her alleged error. This Court could comb through the referenced paragraphs of her amended complaint to identify the facts that may to varying degrees support her position, and then this Court could couple those facts with legal principles (that are absent from her brief) to further support her position. At that point, however, we would be reviewing an argument we constructed, not one she presents on brief. Rather than assuming the role of advocate, however, we review the only argument that she actually presented under this assignment of error—that the circuit court could not consider the "fairly debatable" issue when ruling on the demurrer as a matter of law.

## II. Leave to Amend

Our review of a circuit court's decision to grant or deny a motion for leave to file an amended complaint is limited to the question whether the court abused its discretion. *AGCS Marine Ins. Co. v. Arlington Cnty.*, 293 Va. 469, 487 (2017). After sustaining a demurrer, a court need not

grant leave to amend when "the proffered amendments are legally futile," or "when there is no proffer or description of the new allegations." *AGCS*, 293 Va. at 487. Other relevant considerations include "whether the court previously granted leave to amend, how long the case has been pending, and the extent to which the other side would be prejudiced by allowing amendment." *Doe v. Baker*, 299 Va. 628, 656 (2021).

Boyer requested leave to amend pleadings in her memorandum in opposition to add a count of discrimination if the Court sustained defendant's demurrer. She wanted to amend her complaint to meet the requirement for alleging a valid claim for impermissible discrimination, which is that "the contesting party must show that the requested use granted to one landowner was rejected as to 'another similarly situated.'" *EMAC*, 291 Va. at 22; *McDonald's Corp.*, 261 Va. at 591.

Boyer argues that the circuit court abused its discretion by denying her motion for leave to file a second amended complaint to add a count of "discrimination." Boyer argues that her request was timely because the Board did not decide on a comparable CUP application until November 9, 2022, after her amended complaint had been filed. She believes the request to be timely because no discovery had been taken yet, no trial date set, and no credible claim of prejudice to defendant if amendment was allowed. Boyer contends that the Board would not have been prejudiced if the court had granted her leave to amend and that the court "needed to consider the facts related to the claim of impermissible discrimination." We disagree.

The Supreme Court has affirmed a circuit court's denial of leave to file an amended complaint when the court had "previously granted [plaintiff] leave to amend" and none of the new facts the plaintiff proffered "would . . . have affected the circuit court's analysis." *Baker*, 299 Va. at 656-57. The record here similarly demonstrates that the circuit court previously granted Boyer leave to file an amended complaint. Moreover, in requesting leave to file a second

amended complaint, Boyer provided no significant or specific "proffer or description of the new allegations" she would include.  *AGCS*, 293 Va. at 487.  Rather, she summarily asserted, in a footnote of a pleading, that the Board had approved a "virtually identical . . . application for a similarly situated applicant."  That conclusory proffer contains no specific allegations regarding the nature of the CUP this unnamed "similarly situated application" sought, or that the Board had approved the same "requested use" that it denied Boyer.  *EMAC*, 291 Va. at 22.  Thus, we conclude based on the facts of this case that the circuit court did not abuse its discretion by denying leave to amend.

## CONCLUSION

For the foregoing reasons, we affirm the circuit court's judgment.

*Affirmed.*