COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Ortiz and Chaney
Argued at Richmond, Virginia


7147 MECHANICSVILLE TURNPIKE, L.L.C.

                                        MEMORANDUM OPINION[*] BY

v.       Record No. 1513-24-2           JUDGE RANDOLPH A. BEALES
                                             FEBRUARY 24, 2026

BOARD OF SUPERVISORS OF
 HANOVER COUNTY


FROM THE CIRCUIT COURT OF HANOVER COUNTY
Victoria A. B. Willis, Judge

Joseph M. Rainsbury (Thomas M. Wolf; O'Hagan Meyer, PLLC, on
briefs), for appellant.

Leah D. Han, Deputy County Attorney (Dennis A. Walter, County
Attorney; Rebecca B. Randolph, Deputy County Attorney, on brief),
for appellee.


In this zoning dispute, 7147 Mechanicsville Turnpike, L.L.C. ("Applicant") appeals the

circuit court's order sustaining the demurrer of the Board of Supervisors of Hanover County.

Applicant argues that the circuit court erred in granting the Board's motion craving oyer, erred in

finding the Board's denial of Applicant's rezoning application "fairly debatable," and erred in

sustaining the Board's demurrer.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

# I. BACKGROUND[1]

In July 2023, Applicant 7147 Mechanicsville Turnpike, L.L.C. submitted a request to the Hanover County Planning Department to rezone 6.49 acres in an area that was zoned as a business district to a multi-family residential district so that it could create an apartment complex for seniors. In September 2023, before the Hanover County Planning Commission voted on Applicant's request, the Board of Supervisors of Hanover County adopted a new comprehensive plan.[2] Like the 2017 comprehensive plan before it, the 2023 comprehensive plan recommended a density of 8 to 15 units per acre for multi-family residential districts. The "Hanover County planning staff historically" used gross unit density to determine whether a project complied with the comprehensive plan. They calculated this density number by dividing the number of proposed housing units by the number of acres in the parcel. Under that formula, Applicant's proposed development of 97 housing units would have yielded 14.9 units per acre (97 units divided by 6.49 acres). Therefore, using gross unit density, Applicant's proposed development complied with the comprehensive plan.

Section 26-74 of Hanover County's zoning ordinance states, "Density calculations shall be based on the gross acreage for the district, provided that no more than fifty (50) percent of the

---

[1] In reviewing a circuit court's judgment sustaining a demurrer, the appellate court "accept[s] as true all factual allegations expressly pleaded in the complaint and interpret[s] those allegations in the light most favorable to the plaintiff." *Woods v. Sing Szechuan Rest., L.L.C.*, 84 Va. App. 321, 327 n.1 (2025) (alterations in original) (quoting *Seymour v. Roanoke Cnty. Bd. of Supervisors*, 301 Va. 156, 164 (2022)). This Court draws "any reasonable inferences arising from the express factual allegations of the complaint in the plaintiff's favor." *Id.* (quoting *Seymour*, 301 Va. at 164).

[2] "Code § 15.2-2223 directs each local planning commission to prepare a comprehensive plan 'with the purpose of guiding and accomplishing a coordinated, adjusted and harmonious development of the territory.'" *Hartley v. Bd. of Supervisors*, 80 Va. App. 1, 16 (2024) (quoting Code § 15.2-2223(A)). "As applied to private facilities, a comprehensive plan is generally 'a guideline for the development and implementation of a zoning ordinance' and 'does not, by itself, act as an instrument of land use control.'" *Id.* at 16-17 (quoting 1987-88 Op. Va. Att'y Gen. 212, 213).

acreage determined to be in Chesapeake Bay Resource Protection Areas may be included." As opposed to gross unit density, net unit density considers the reduction in acreage because of land in a Chesapeake Bay Resource Protection Area. Because 2.5 acres of the property was in the Protection Area, Applicant's project would have resulted in a net unit density of 17.86 units per acre—which was more than the recommended density of 8 to 15 units per acre for multi-family residential districts. Following a public hearing on October 19, 2023, the Hanover County Planning Commission recommended approving the rezoning request. However, the Planning Commission did note that the proposal's net unit density exceeded the comprehensive plan's recommended limit of 15 units per acre for multi-family residential districts.

On November 8, 2023, the Hanover County Board of Supervisors considered Applicant's proposal. During the meeting on Applicant's rezoning request, Andrew Pompei, Hanover County's Deputy Planning Director, noted that the development would have no impact on schools. Although the development would not have a significant impact on traffic, Applicant proffered to build a turn lane at the development's entrance "and made a cash proffer of $209,035 for future transportation requirements." Pompei also stated that although the proposal's gross unit density was under 15, its net unit density exceeded 15.

Several members of the public spoke in favor of the proposal. A couple stated their intention to move to the development if approved and constructed. Applicant's representative at the hearing, Larry Shaia, highlighted that the development would yield over $150,000 in yearly tax revenue for the County. Other members of the community spoke against the proposal. One resident of the Ashland District stressed that the parcel was surrounded by protected land and water resources and contained land in the Chesapeake Bay Resource Protection Area. In addition, a resident of the Henry District stated that the development would exceed the maximum allowable density.

One Board member argued that the proposal met the requirements of the 2017 comprehensive plan. Another Board member stated that residents had asked for more affordable homes for senior citizens. Two Board members voiced concern that the rezoning request would violate the comprehensive plan. One of those Board members explained that the Board judges proposals based on when it actually votes on the proposal—not on when an application is filed. The Board then denied the request, with three members voting in favor of it and four members voting against it.

On December 7, 2023, Applicant filed a complaint seeking a declaratory judgment in the Circuit Court of Hanover County arguing that the Board's decision was arbitrary and capricious, discriminatory, and void. Applicant asked the circuit court to order the Board to approve the rezoning application. Applicant included in its complaint select parts of the legislative record before the Board, including a portion of the land use plan map from the county's comprehensive plan, an image of the planned structure, and an image of the development's conceptual plan. Applicant also stated in the complaint that a study showed that the development would not significantly impact traffic and that the Hanover County Planning Commission had supported approving the application. Furthermore, Applicant described Pompei's presentation to the Board of Supervisors and quoted from citizens' comments and Board members' remarks before the Board voted.

On January 18, 2024, the Board filed a motion craving oyer to add portions of the legislative record that provided context and complete versions of the images, documents, and discussions included and referenced in the complaint. After a hearing, the circuit court granted the Board's motion craving oyer. The circuit court explained, "Governing bodies only act at public hearings and base their decisions on the information available to them, including documents, reports, studies, and comments from applicants and interested members of the

- 4 -

public." The circuit court further explained that "[t]he record of the proceedings—the legislative record—is the record of that conduct." The circuit court accepted into the record portions of the comprehensive plan including the complete land use plan map; a traffic impact analysis and Applicant's related proffers; drawings, sketches, and blueprints of the proposed development; presentations given at the Planning Commission's meeting as well as a video, transcript, and minutes of the meeting; Pompei's and Shaia's presentations to the Board; and a video, transcript, and minutes of the Board's meeting.

The Board then demurred, arguing that its decision denying the rezoning request was fairly debatable. The circuit court sustained the demurrer and dismissed Applicant's complaint. Applicant now appeals to this Court.

## II. ANALYSIS

### A. Motion Craving Oyer

On appeal to this Court, Applicant argues, "The Trial Court erred in granting the Board's motion craving oyer, as the Complaint does not 'claim under' the legislative record."

We review the circuit court's decision granting a motion craving oyer de novo. *City of Emporia v. County of Greensville*, 81 Va. App. 28, 41 (2024). "A motion craving oyer is 'a remedy afforded to a litigant who has been sued on a claim based upon a written document mentioned in a claimant's pleading but not made a part of the record.'" *Id.* (quoting *Byrne v. City of Alexandria*, 298 Va. 694, 700 (2020)). "[W]here a court is asked to make a ruling based upon a writing or document, that writing or document should be made a part of the record." *Id.* at 42 (citing *Byrne*, 298 Va. at 701). A motion craving oyer is appropriate where "a court is asked to make a ruling upon any paper or record." *Culpeper Nat'l Bank v. Morris*, 168 Va. 379, 383 (1937). Thus, "[t]he motion should be granted only where the missing document is essential to the claim." *Byrne*, 298 Va. at 700-01 (holding that a circuit court did not err when it granted a

- 5 -

city council's motion craving oyer and admitted the legislative record of the city council's challenged decision).  The Supreme Court has stated, "No intelligent construction of any writing or record can be made unless all essential parts of such paper or record are produced" and that a litigant cannot put blinders on a court and thereby "attempt to restrict its vision to only such parts of the record as the litigant thinks tend to support his view."  *Morgan v. Bd. of Supervisors of Hanover Cnty.*, 83 Va. App. 720, 743-44 (2025) (quoting *Byrne*, 298 Va. at 701).  However, when a plaintiff does not "claim under" the documents that a party seeks to add to the record (because the documents are not essential to the claim), the trial court should deny oyer.  *Byrne*, 298 Va. at 700 (quoting *Langhorne v. Richmond Ry. Co.*, 91 Va. 369, 372 (1895)).

Here, Applicant is challenging the Board's decision to deny Applicant's rezoning request.  In its complaint, Applicant asserted that the Board's decision denying Applicant's request was arbitrary, capricious, discriminatory, and void.  In making this claim, Applicant argued that the development would not disrupt nearby traffic, that the Hanover County Planning Commission had voted for and recommended approving the application, and that some citizens supported Applicant's rezoning request.  For support, Applicant relied on select portions of the legislative record.  For example, Applicant referenced remarks made by citizens during the zoning hearing, points raised by Board members, and renderings of Applicant's proposed development.

However, "[t]he power to regulate the use of land by zoning laws is a legislative power."  *Bd. of Supervisors v. Southland Corp.*, 224 Va. 514, 521 (1982).  "Further, judicial review of legislative acts such as we have here must be approached with particular circumspection and courts will not inquire into the motives of the legislative bodies elected by the people."  *Morgan*, 83 Va. App. at 737-38.  "When we are called upon to review the acts of . . . boards exercising delegated legislative power the inquiry must ordinarily be whether the . . . board has acted arbitrarily or capriciously."  *Id.* at 738 (alterations in original) (quoting *Ames v. Painter*, 239 Va.

343, 349 (1990)). When considering a challenge to a local governing body's land use decision, the trial court presumes that the legislative action is reasonable. *Bd. of Supervisors v. Lerner*, 221 Va. 30, 34 (1980). Reasonableness depends on whether "the matter in issue is fairly debatable"—whether objective and reasonable people may logically arrive at different conclusions about the correct result. *Bd. of Supervisors v. Robertson*, 266 Va. 525, 532 (2003) (quoting *Lerner*, 221 Va. at 34).

By granting the Board's motion craving oyer, the circuit court ensured that Applicant could not put blinders on the court and "attempt to restrict its vision to only such parts of the record as the litigant thinks tend to support his view." *Morgan*, 83 Va. App. at 743-44 (quoting *Byrne*, 298 Va. at 701). If the circuit court had not granted the Board's motion craving oyer, it would have allowed Applicant to eliminate some of the parts of the legislative record that favored the Board's decision to deny Applicant's rezoning request. Indeed, if the circuit court had not granted the Board's motion craving oyer, the circuit court could not have considered (1) almost the entirety of appellant's application, (2) the traffic impact analysis, (3) the report or presentations considered at the Planning Commission's meeting, (4) the transcript of the Planning Commission's meeting, or (5) the Planning Commission's written recommendation.

All of Applicant's claims for relief involved the denial of its rezoning application. Applicant was therefore "claiming under" the legislative record on which the Board based its decision denying Applicant's request because Applicant was challenging the reasonableness of the Board's decision. Indeed, as the circuit court explained below, "the record is essential to [Applicant's] claims" because Applicant decided to include references to the record that "constitute[d] substantive allegations in support of its claims"—but without also including other parts of the legislative record that a reviewing court might need to make an informed decision. Thus, because the circuit court simply could not properly consider the Board's decision without

granting the motion craving oyer, the circuit court did not err when it decided to grant that motion.[3]

## B.  Demurrer

Applicant also argues, "The Trial Court erred in sustaining the Board's demurrer because the Complaint alleged facts establishing that the issue of approving Plaintiff's rezoning request was not 'fairly debatable.'"

"At the demurrer stage, we must take as true all material facts properly pleaded."  *Hartley v. Bd. of Supervisors*, 80 Va. App. 1, 26 (2024).  "Because appellate review of the sustaining of a demurrer involves a matter of law, we review the trial court's judgment de novo."  *Glazebrook v. Bd. of Supervisors*, 266 Va. 550, 554 (2003).

Supreme Court caselaw has clearly established that a circuit court can consider documents admitted through a motion craving oyer when deciding whether to sustain a demurrer. *See Eagle Harbor, L.L.C. v. Isle of Wight County*, 271 Va. 603, 620 (2006) (ruling that a circuit court may rule on a demurrer where the pleadings have been expanded through the incorporation of other documents).  Indeed, the Supreme Court has stated,

> We also take into account factual allegations contained in "documents brought into a case as a result of a motion craving oyer" as they "are incorporated into the pleadings and may be used to 'amplify' the facts alleged in a complaint when a court decides whether to sustain or overrule a demurrer."

---

[3] Applicant argues that the circuit court erred in granting oyer because it was supposed to consider "all the facts of the particular case," not only those contained in the legislative record. However, the circuit court's grant of oyer did not limit its review to the admitted part of the legislative record on the demurrer.  Rather, it simply added parts of the legislative record proffered by the Board to the record of the case to be considered alongside the complaint (and the parts of the record contained in the complaint) when it ruled on the demurrer.  All these documents were essential to Applicant's claims, so we find no error in the circuit court's granting oyer. *Morgan*, 83 Va. App. at 743; *Byrne*, 298 Va. at 700.

*Hale v. Town of Warrenton*, 293 Va. 366, 366 (2017) (quoting *EMAC, L.L.C. v. County of Hanover*, 291 Va. 13, 21 (2016)). The Supreme Court has also stated, "[A] court considering a demurrer may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings." *EMAC*, 291 Va. at 21 (quoting *Schaecher v. Bouffault*, 290 Va. 83, 107 (2015)).

In addition, and as noted *supra*, the Supreme Court has been clear that "[l]ocal governing bodies, because of their knowledge of local conditions and the needs of their individual communities, are allowed wide discretion in the enactment and amendment of zoning ordinances." *Byrum v. Bd. of Supervisors*, 217 Va. 37, 39 (1976). Because "regulat[ing] the use of land by zoning laws is a legislative power," *Southland Corp.*, 224 Va. at 521, "a presumption of legislative validity [is] attached" to the Board's actions at issue in this case, *Robertson*, 266 Va. at 532. "This presumption of validity remains with the legislative action as we review the decision of the circuit court" and can be described as "a presumption of reasonableness." *Id.* "Legislative action is reasonable if the matter in issue is fairly debatable." *Id.* (quoting *Lerner*, 221 Va. at 34). "An issue is '*fairly* debatable when the evidence offered in support of the opposing views would lead objective and reasonable persons to reach different conclusions.'" *Id.* (emphasis in original) (quoting *Bd. of Supervisors v. Williams*, 216 Va. 49, 58 (1975)). "If evidence of reasonableness is sufficient to make the question fairly debatable, the ordinance 'must be sustained.'" *Norton v. City of Danville*, 268 Va. 402, 409 (2004) (quoting *Bd. of Supervisors v. Snell Constr. Corp.*, 214 Va. 655, 659 (1974)).

In *Byrne v. City of Alexandria*, 298 Va. 694 (2020), the Supreme Court used the "fairly debatable" standard to affirm a circuit court's decision sustaining a demurrer after the circuit court granted a motion craving oyer filed by the City Council. There, like in the case now before this Court, the appellant tried to show that the decision of the legislative body at issue was

arbitrary and capricious. *Id.* at 701-02. Moreover—and again as in this case—the legislative body (the City Council) in *Byrne* was performing a legislative function when it denied the appellant's request. *Id.* at 702. The Supreme Court explained that legislative functions are "presumed correct" and will be considered by courts to be reasonable as long as they are "fairly debatable." *Id.* "An issue is fairly debatable 'when the evidence offered in support of the opposing views would lead objective and reasonable persons to reach different conclusions.'" *Id.* (quoting *Norton*, 268 Va. at 409).

The Supreme Court found that the legislative body's decision denying the appellant's request was "fairly debatable" in part because "[t]he legislative record added to the pleadings as a result of the motion craving oyer" showed that the legislative body "made its decision within its lawful authority." *Id.* Thus, in *Byrne*, the Supreme Court established (1) that appellate courts use the "fairly debatable" standard when considering whether a circuit court erred in sustaining a legislative body's demurrer and (2) that appellate courts can consider documents added through a motion craving oyer to decide whether a legislative body's decision was reasonable.

Code §§ 15.2-2223 and 15.2-2283 are relevant for purposes of this appeal because they address the Board's duty to adopt a comprehensive plan and state what the Board must consider when making zoning ordinances. Code § 15.2-2223 requires each locality to adopt a comprehensive plan and consider it when making land use decisions. *See* Code § 15.2-2223(C). A comprehensive plan is "a guideline for the development and implementation of a zoning ordinance" that "does not, by itself, act as an instrument of land use control." *Hartley*, 80 Va. App. at 17 (quoting 1987-88 Op. Va. Att'y Gen. 212, 213). A comprehensive plan may include a zoning ordinance and zoning district maps. Code § 15.2-2223(C)(5).

Code § 15.2-2283 defines the purpose of zoning ordinances. According to that statute, "Zoning ordinances shall be for the general purpose of promoting the health, safety or general

- 10 -

welfare of the public and of further accomplishing the objectives of § 15.2-2200." Code § 15.2-2283. Code § 15.2-2283 also lists 12 different considerations that a zoning body should "give reasonable consideration" to when creating a zoning ordinance—as long as those considerations are "applicable" to the matter in question. Code § 15.2-2283. Among other things, the zoning body at issue in this case was to consider creating an ordinance that did the following:

> reduce or prevent congestion in the public streets; . . . facilitate the provision of adequate . . . schools; . . . protect against . . . undue density of population in relation to the community facilities existing or available; . . . encourage economic development activities that . . . enlarge the tax base; . . . provide for the preservation of . . . lands of significance for the protection of the natural environment; [and] . . . promote the creation and preservation of affordable housing.

*Id.* Although a zoning authority must consider the factors in Code § 15.2-2283, "[t]he weighing of the relevant factors is a legislative function." *Bd. of Supervisors v. Miller & Smith, Inc.*, 242 Va. 382, 384 (1991). In addition, Code § 15.2-2284 states, "Zoning ordinances and districts shall be drawn and applied" by zoning authorities "with reasonable consideration for the existing use and character of property" as well as for "the comprehensive plan." Code § 15.2-2284.

Here, in the case now before us, reasonable persons reached different conclusions. For example, the Hanover County Planning Commission, several members of the public, and three Board members supported the request. Of the four Board members who voted against the request, two echoed citizen concerns that the development's net unit density exceeded the maximum allowed for multi-family residential districts under the comprehensive plan. "It is not only proper but even expected that a legislat[ive body] and its members will consider the views of their constituents to be particularly compelling forms of evidence, in zoning as in all other legislative matters." *Loch Levan Land Ltd. P'ship v. Bd. of Supervisors*, 297 Va. 674, 692 (2019) (alteration in original) (quoting *AT&T Wireless PCS v. City Council of Va. Beach*, 155 F.3d 423, 430-31 (4th Cir.

- 11 -

1998)).  Indeed, the fact that the Board members and the citizens could provide reasonable arguments both supporting and opposing Applicant's rezoning request reveals that the Board's decision to ultimately deny that request was "fairly debatable."  Thus, according to Supreme Court caselaw, Applicant has not overcome the Board's presumption of correctness and the Board's decision "must be sustained."  *Norton*, 268 Va. at 409 (quoting *Snell Constr. Corp.*, 214 Va. at 659).

Applicant argues that noncompliance with the comprehensive plan alone could not have justified the Board's decision.  However, the Board considered factors other than the comprehensive plan before it denied Applicant's rezoning request.  The Board considered the moderate impact that granting Applicant's rezoning request would have on local traffic.  Code § 15.2-2283(ii).  The Board also heard testimony on the taxes and available housing that the development was expected to generate and create as well as whether the development would have any impact on local schools.  Code § 15.2-2283(iv), (vii), (x).  In addition, the Board was able to consider that rejecting Applicant's proposal would protect land near the Chesapeake Bay Restoration Area Project and thus preserve "lands of significance for the protection of the natural environment."  Code § 15.2-2283(viii).  Having the right and responsibility to weigh these relevant factors, the Board found that the proposal's noncompliance (including by violating the acceptable net unit density) with the comprehensive plan—which had recently been debated and adopted by the Board—outweighed considerations in the proposal's favor.  Thus, as the legislative record reveals that the Board weighed multiple factors before making its decision, its choice to deny Applicant's rezoning request is "fairly debatable."  As noted *supra*, this Court therefore should not disturb the Board's decision.  *See, e.g.*, *Byrne*, 298 Va. at 701-02.

Applicant also argues that the circuit court had to consider the reasonableness of the Board's decision in light of its proffers.  *Riverview Farm Assocs. Va. Gen. P'ship v. Bd. of Supervisors*, 259 Va. 419, 428 (2000) (stating that a circuit court had to consider a party's

proffers when deciding whether the party's proposed use complied with the comprehensive plan at issue in that case). However, Applicant has not shown that the Board or the circuit court ignored or did not consider its proffers—or shown that the Board's decision was arbitrary or capricious in light of the proffers. Moreover, Applicant's proffers did not address the proposal's failure to comply with the acceptable net unit density. For example, Applicant did not proffer to reduce the planned number of housing units in the development so as to reduce net unit density. Instead, Applicant proffered to address future transportation needs. Applicant has thus not presented evidence showing that the circuit court failed to consider the Board's decision in light of Applicant's proffers.

In addition, Applicant asserts that the Board's action was discriminatory. "In order to allege a valid claim for impermissible discrimination, the contesting party must show that the requested use granted to one landowner was rejected as to 'another similarly situated.'" *EMAC, L.L.C.*, 291 Va. at 22 (quoting *Bd. of Supervisors v. McDonald's Corp.*, 261 Va. 583, 591 (2001)).[4] Applicant vaguely alleged in its complaint that the "Hanover County planning staff historically" used gross unit density to calculate unit density. However, Applicant did not allege anywhere in its complaint that the Board of Supervisors had approved rezoning requests made by other entities based on gross unit density where Section 26-74 of the Hanover County zoning ordinance was relevant because part of the proposed project was in a Chesapeake Bay Resource Protection Area. Applicant presented only a legal conclusion alleging discrimination without necessary supporting facts, so the circuit court did not err in refusing the relief Applicant sought.

In short, because Applicant could not show that the Board's decision to deny Applicant's rezoning request was arbitrary, capricious, or discriminatory, because the Board's decision to

---

[4] Although we "accept as true all facts properly pleaded and all reasonable inferences," a demurrer "does not admit the correctness of the pleader's legal conclusions." *Ramos v. Wells Fargo Bank, NA*, 289 Va. 321, 322-23 (2015).

deny was at least fairly debatable, and because of the reasoning in the Supreme Court's decision in 2020 in *Byrne v. City of Alexandria* in which the Supreme Court affirmed the circuit court's sustaining of the City Council's demurrer, we also hold that the circuit court did not err in this case in sustaining the demurrer of the Hanover County Board of Supervisors.

## III.  CONCLUSION

For all of the foregoing reasons, we affirm the circuit court's judgment granting the motion craving oyer of the Hanover County Board of Supervisors and sustaining the Board's demurrer to 7147 Mechanicsville Turnpike, L.L.C.'s complaint.

*Affirmed.*